24  344
25  393
24  344
27  275
24  344
33  277

[No. 3521.]

WATER SUPPLY AND STORAGE CO. v. TENNEY ET AL.

1. PLEADING.

Error committed by striking out part of reply is cured by the introduction in evidence, without objection, of the matters attempted to be set up in the reply.

2. DECREE—INTERPRETATION.

In a proceeding adjudicating the priorities of water rights, a decree was entered containing this clause : " When said ditch and reservoirs are fully completed, if there shall be a scarcity of water so that they cannot be filled, then the right to the full use of said priority in said ditch and reservoirs shall date from the time of their completion." *Held*, that the limitation of the priority to the completion of the work applied to the ditch as well as to the reservoirs.

3. DECREE—AUTHORITY OF COURT.

In a proceeding to adjudicate priorities to use of water under our irrigation statutes, the district court has no authority to give any definite decree in favor of a ditch not then complete.

4. SAME.

A decree limiting the priorities of a ditch to the completion of the work, pronounced by a court having jurisdiction of the subject-matter, of the person, and to enter the particular judgment, and not appealed from, cannot collaterally be attacked and set aside, even though an erroneous conclusion was reached.

5. ESTOPPEL.

Evidence examined and held not sufficient to create an estoppel.

6. CORPORATE POWERS—WHO MAY QUESTION.

The power of a new company, incorporated to obtain an additional water supply for the owners of water rights in a certain ditch, to purchase the water rights of such ditch, can only be questioned by the state.

7. REHEARING.

At the original hearing both parties conceded that a certain decree was
the measure of their respective rights.  At the rehearing appel-
lant will not be permitted to change front, and attack the decree
as void.

*Appeal from the District Court of Larimer County.*

THIS action was instituted by the plaintiff corporation
(appellant here) to restrain the defendant water commis-
sioner and the defendant company (appellee) from divert-
ing water from the Cache la Poudre river for the defendant's
North Fork ditch until after the Larimer county ditch,
belonging to the plaintiff, received its alleged earlier appro-
priation.  Both corporations own ditches taking water from
the Cache la Poudre river, and both base their rights upon
a decree of the district court of Larimer county of date
April 11, 1884, which was rendered in proceedings, duly
instituted under the irrigation acts of 1879 and 1881, having
for their object the adjudication of priorities to the use of
water for irrigation purposes in that particular water district.

To the proceedings leading up to the decree the grantors
respectively of both of the corporation litigants were parties.
They appeared therein, and offered evidence, and neither of
them, nor their grantees, have in any way sought to have a
review of said decree, either upon the same or additional
evidence, or by appeal, within the time fixed by the statute
governing the right of review in the same, or in the appel-
late, court.  So no question arises as to the rights of those
not parties to this decree.

While the parties here rely upon the decree, the present
controversy arises chiefly out of the different constructions
which they put upon that portion of it adjudicating the
rights of the defendant company's ditch.

As an amendment to its answer, the defendant company
set up what it calls a fourth defense, in which it is alleged
that in the proceeding heretofore mentioned, and in subse-
quent proceedings had in said original proceeding, there was

decreed to the grantor of the defendant, The North Poudre
Land and Canal Company, a priority, No. 97, for the use of
water to the amount of 307 cubic feet of water per second
of time, dating from the 1, day of February, 1880. In the same
proceeding, it is alleged, the plaintiff company's grantor also
obtained a decree by which it was ordered that said grantor
should have a priority to the use of water from the same river,
to the amount of 463 cubic feet per second of time, dating from
the 25, day of April, 1881. Therein it is further alleged that
ever since the date of the decree thus fixing the respective
priorities of the parties, the defendant has in each and every
year exercised its right to have the water turned into its
ditch by the water commissioner to the extent of the appro-
priation awarded it, and that the water commissioner has rec-
ognized, during all such time, a seniority of the defendant's
appropriation over that of the plaintiff, and that plaintiff and
its grantor, during all of such time, well knew that the defend-
ant and its grantor claimed, took and used the water by vir-
tue of its said priority; and notwithstanding the same, the
plaintiff and its grantor were silent with respect thereto, and
made no complaint, objection or protest to the defendant or
to the water commissioner until about the time of the begin-
ning of this action in August, 1893.

To this defense there was interposed by plaintiff a replica-
tion; and the second reply thereof to the said fourth defense
in terms pleaded the exact language of the decree in ques-
tion. The defendant then moved to strike out the said sec-
ond reply, which motion was sustained by the court.

After issues of fact had been made by the pleadings, and
preliminary questions of law settled by various motions and
demurrers, a hearing upon evidence was had before the court
without a jury.

There was also some controversy between the parties as
to certain reservoirs owned by them. Upon final hearing
the preliminary writ of injunction, — which had been issued
at the instance of the plaintiff upon the filing of its complaint,
by which the defendants were restrained from diverting the

water until after the plaintiff had obtained what it claimed it was entitled to under its appropriation — was dissolved and held for naught, except as to plaintiff's reservoirs Nos. 2, 3 and 4, and as to them the injunction was made perpetual; the decree in this respect being that the plaintiff had the right to store water in its said reservoirs for the purpose of irrigating its lands to the extent of their capacities as then constructed.

As to the controversy respecting the Larimer county ditch now owned by the plaintiff, and the North Fork ditch owned by defendant company, the finding and decree were in favor of the latter.

That portion of the decree of 1884 particularly affecting the defendant company is as follows:

" No. Sixty-One.

" The North Poudre Land, Canal and Reservoir Company Ditch.

" That the work referred to in the original decree on which said ditch should be entitled to priority No. 87 in said decree has been completed for about two miles to the lower end of that portion of the ditch known as 'Cañon Line' and partially completed about five miles below the end of said Cañon Line.    That about $153,000 have been expended in the construction of said ditch and the greater portion thereof on that part of said ditch known as the Cañon Line, that said ditch is entitled to priority No. 97 of this new numbering, limited however as follows: There shall be allowed to flow into said ditch to the lower end of said Cañon Line so much water as said ditch will carry, it being eight feet in width, six feet in depth and a grade of 10 and 56/100 feet per mile, and above said lower end said water may be taken from the said ditch by laterals, the amount computed at 307 cubic feet of water per second of time, and said water on said priority may be used in and applied in its use to said ditch below said Cañon Line as fast as said ditch shall be completed and ready to use the same and does use the same; and said water . may be used for the purpose of filling the reservoirs marked

on the map thereof in the testimony respectively Nos. 1, 2, 3, 4, 6, 16, 17, 18, 19 and 21, provided that the work on said ditch and reservoirs shall be diligently prosecuted and completed within a reasonable time ; *provided also that when said ditch and reservoirs are fully completed if there shall be a scarcity of water so that they cannot be filled then the right to the full use of said priority in said ditch and reservoirs shall date from the time of their completion,* provided also that if any laterals shall be taken out above said lower end of said Cañon Line that the same shall be within reasonable time and the work thereon shall be diligently pursued."

Mr. GEO. W. BAILEY, Mr. H. I. GARBUTT and Mr. H. N. HAYNES, for appellant.

Mr. CHARLES H. TOLL, Mr. WILLIAM R. BARBOUR, Mr. C. M. GARWOOD, Mr. J. W. McCREERY and Mr. FRANCIS G. HAMER, for appellees.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

Among the errors assigned is one that the court below erred in sustaining the defendant's motion to strike out the second reply to the fourth amended defense of the answer. Interesting as the question of pleading sought to be raised may be, inasmuch as the plaintiff was permitted, without objection from the defendants, to introduce in evidence, according to plaintiff's own admission, the very matters attempted to be set up in this reply, the error is cured, if any there was, in sustaining the motion to strike.

The construction placed by appellant upon that portion of the decree which awards to the defendant company its priority is that whenever there is a scarcity of water in the stream, the date of such priority takes effect, not from the beginning of the work, but from the date of its completion.

Upon the other hand, the various contentions of the defendant corporation with respect to the merits of the case

are, *first*, that the decree of 1884 is itself absolute; that it determines the quantity of water to which defendant's ditch in its entirety is entitled, and fixes with certainty the date of the appropriation as of the time of beginning the work, viz: in 1880; that, were this not so, and the decree merely a conditional one, or that, by the terms thereof, the priority was to date only from the completion of the work, nevertheless, by reason of the acquiescence upon the part of the plaintiff company, and by its conduct in silently standing by and seeing the water commissioner make distribution of the water upon the basis of the decree as construed by said water commissioner, by which the defendant's priority over the plaintiff was acknowledged and recognized, the plaintiff is thereby estopped now from questioning the absolute verity of the decree, and must be held to have waived any superior rights, if any it ever had.

The defendant further contends that, under its certificate of incorporation, plaintiff had no corporate power to acquire the water rights decreed to the Larimer county ditch; and that, under the evidence introduced in this case, even were the entire matter of the adjudication of water rights open for determination, the proof shows that defendant's rights are superior to those of the plaintiff.

Section 314 of the General Statutes of 1883 (Mills' Ann. Stats. sec. 573) gives rise to another point of dispute between the parties, the plaintiff claiming that thereunder, unless the ditch or canal of the defendant company was completed within three years from the beginning of the work, the date of priority attaches as of the date of the completion, and not from the beginning, while the contrary of this proposition is maintained by the defendant, it being conceded that the work was not completed and the appropriation of water actually made until more than three years after the work was actually begun, and until after the decree was rendered.

Much of the evidence introduced by the parties was not pertinent to any issues that could properly be tried in this action. The only bearing some of this evidence had upon

any possible feature of the case related to issues that were settled and determined years before, when the original decrees were made. While both of the parties to this controversy base their rights in the main upon these decrees, nevertheless there would seem to be indications at the trial below that they supposed some of the matters there determined were still open for adjudication. It is conceded that the contingency anticipated by the decree above quoted (viz: that there might be a scarcity of water) had happened prior to, and continued to exist at, the time this action was begun.

The language of this decree is not, in all respects, free from doubt; but we think the meaning of the district court may be given effect. It will be observed that when the decree was entered, but two miles of the ditch were completed, and for five miles more the work was only partially done. The upper two miles of the ditch was known as the "Cañon Line." It was built through a rocky, precipitious cañon, the sides of which were high, and much time was consumed in its construction. Work was begun on the first of April, 1880, and, according to the statement of the owners, the ditch was intended to be fifty-two miles long. In April, 1882, when the original decree was entered, no part of the ditch had been completed. The rights of these parties are not in any way settled by this original decree, but must be ascertained from the supplemental one of 1884, the portion of which applicable to descendant's ditch has been set out *in extenso* in the statement of facts.

The carrying capacity of the ditch, as then completed, was computed to be 307 cubic feet of water per second of time. Possibly the decree is susceptible of the interpretation that, if within a reasonable time from its entry, laterals were constructed at any point along the first two miles of the completed ditch, and lands were, within a reasonable time thereafter, irrigated therefrom, an absolute priority was given to such portion of the ditch to its full carrying capacity, to date from the time of the beginning of the work. Certainly, no more favorable interpretation in behalf of the defendant could

possibly be deduced from the language of the decree. But when we come to consider the character and nature of the country through which this completed portion of the ditch ran, and bear in mind that the evidence fails to show that any laterals have ever up to the present time been taken from this portion of the ditch, such an interpretation would be of no practical value to the defendants. Therefore, doubtless for this as well as other reasons satisfactory to themselves, the counsel for appellees insist that the limitation mentioned by which, in times of scarcity, the full priority is to be enjoyed from the then uncompleted portions of the ditch as of the date when the ditch was finished, and not from the beginning of the work, applies only to the storage of water in reservoirs.

To us there seems to be at least two insuperable objections to any such interpretation: *first*, the language of the decree itself is against it, for this language is " when said ditch and reservoirs are fully completed if there shall be a scarcity of water so that they cannot be filled, then the right to the full use of said priority in said ditch and reservoirs shall date from the time of their completion." The language of the limitation certainly refers not merely to the reservoirs, but to the ditch. But if there was any doubt about this proposition, still when we consider that by section 2270 of Mills' Annotated Statutes (Gen. Stats. 1883, sec. 1724) which confers the only authority for filling reservoirs, water for storage in reservoirs can be used only when not needed for immediate domestic and irrigating use, the language employed in the decree must be held to include the ditch as well as the reservoir. It is scarcely conceivable that the district court would deliberately enter a decree giving to a reservoir owner any priority to fill his reservoir which would conflict with any right of a ditch owner to use water for irrigation, even though the priority of the latter was junior in time to the construction of the reservoir.

There may be some uncertainty as to whether, under our irrigation statutes, the district court in making these decrees

had the authority to give to any ditch any fixed carrying capacity before the water was actually applied to a beneficial use; but there scarcely can be any serious contention that the court had authority to give any definite decree in favor of a ditch not then completed, and, if such decrees were to be entered now, it is probable that the courts would require not only that the ditch be completed, but the water through it be actually applied to a beneficial use, before awarding to it any priority.

In the conclusion to which we have come in this case, however, we have assumed (though not decided) that, in the decree before us, the district court has awarded to that portion of the defendant's ditch not then completed a certain priority; but unless that priority antedates the priority given to plaintiff's ditch, the plaintiff is entitled to prevail in this action. Giving to the decree, therefore, all the validity it purports to carry on its face, it is clear that as to such portions of the ditch as were finished after the decree was rendered, by the express terms of the decree the priority thereof was to be of the date of completion, and as the ditch owned by the defendant was confessedly not completed until several years after the date of the priority awarded the plaintiff, the latter's rights are superior.

If, therefore, the district court had the right to give to the completed portion of the ditch a certain priority to date from a certain time, and to enter the further and additional decree that water to the same capacity might be used through and by means of the uncompleted portions of the ditch, provided the same should be completed within a reasonable time (which we do not decide) the court, nevertheless, in this particular decree expressly limits the priority as to the then uncompleted portion to take effect as of the date of the finishing of the work.

Neither has it been necessary that we definitely determine whether the legislature has the power which it assumed to exercise (Gen. Stats. 1883, sec. 314; Mills' Ann. Stats. sec. 573) to prescribe a period of time within which work on an

irrigating ditch must be completed in order to entitle it to a priority dating from the inception of the work. This statute was in force when the decree of 1884 was entered, and inasmuch as at that time more than four years had elapsed since work began, and only two miles of the ditch out of the total length of fifty-two miles was then completed, it may be true that the district court was guided by the provisions of the statute when it refused in entering the decree to carry back the priority of the North Fork ditch to the beginning of the work in 1880.

But whether the district court thus limited the priority because of this statute, or whether upon general principles it held that due diligence in the prosecution of the work was not observed, is quite immaterial. The decree thus limiting the appropriation was pronouced by a court having jurisdiction of the subject-matter, of the persons, and to enter the particular judgment. It has not been appealed from, and cannot be set aside now, even though an erroneous conclusion was reached.

With a view to determine its sufficiency we have carefully examined the entire evidence as to the alleged estoppel against the plaintiff; and we are satisfied that it is not sufficient to work a forfeiture of the superior rights which the decree conferred upon the ditch owned by the plaintiff company. Ordinarily, in times of scarcity of water, the ditches from the same stream and which are older in point of time than either of the ones involved in this case, more than consume the entire volume of water flowing in the stream; and in shutting down the head-gates of these two ditches at different times the water commissioner frequently did it so nearly simultaneously and with so little apparent discrimination in favor of one against the other that this, of itself, should not operate to divest the plaintiff of valuable property rights. While it is true that the plaintiff company did not make any formal protest or objection until within a short time before the bringing of this suit to the action of the water commissioner in regarding the priority of the defendant company

as superior to that of the plaintiff, yet, as a matter of fact, in conversations with the water commissioner, the officers of the plaintiff company denied the correctness of the assumption by him, and asserted that their ditch was entitled to precedence.  Only within a very few years prior to the time this suit was begun was this action of the water commissioner appreciably injurious to the plaintiff company, and within a reasonable time after it became apparent that the defendant company intended to insist upon its construction of this decree the plaintiff company began this suit for the purpose of settling the controversy between the parties. We fail to find in the evidence here any such acquiescence by the plaintiff, or recognition by it of a superior right in the defendant, that should now estop the plaintiff to allege the contrary.  2 Pomeroy's Equity Jurisp. (2d ed.) § 817.

But one additional point is made by the appellee which we deem it important to notice, that is, that the plaintiff company, under its certificate of incorporation, has not the capacity to receive by purchase the water rights belonging to the Larimer county ditch.  The incorporators and stockholders of the plaintiff company are the same persons who were the water right owners under the old ditch.  The certificate of incorporation of the new or plaintiff company specifies as its object " to obtain an additional water supply for those then owning water rights in the Larimer county ditch."  For the new company to buy merely what its stockholders, as owners of water rights, already possessed, is said not to be purchasing an additional water supply.  The point at best is technical, and there are several reasons why it is not tenable.  In the first place, no direct issue has been made as to the power of the company to make this purchase, and we do not intimate that the objection is meritorious. As a matter of fact, the plaintiff company has received and recorded its deed of conveyance of this ditch and the water rights attaching thereto, and for years has been in possession of the property and exercised acts of ownership over it and enjoyed the benefits of the water flowing through the ditch.

In some of these cases, where the statute expressly prohibits certain designated persons from holding real estate, the distinction has been drawn between the power to take, and the power to hold, and that while the prohibited persons could not hold real estate, they might, by deed of conveyance, take and enjoy it until the sovereign power, by a proper proceeding, enforced the law. If, in this case, the plaintiff company has exceeded its powers, the state in a proper proceeding may punish it for exceeding its authority, but the defendant company is in no position here to complain of the alleged lack of power. *Cal. State Tel. Co. v. Atl. Tel. Co.*, 22 Cal. 398; *National W. & W. Co. v. Clarkin*, 14 Cal. 544; *Goundie v. Northampton Water Co.*, 7 Pa. St. 232; *C., B. & Q. R. Co. v. Lewis et al.*, 53 Ia. 101; *Nat. Bank v. Matthews*, 98 U. S. 621; *Cowell v. Springs Co.*, 100 U. S. 55; 2 Morawetz on Private Corporations (2d ed.), § 710, and cases cited.

In his opinion and findings the learned district judge expressed grave doubts as to the correctness of his decision, and declared his dissatisfaction with any conclusion he might reach because of the lack of ample time needed for the disposition of questions so difficult and so important. With his findings and decree respecting the reservoirs, we are in accord, and the same are affirmed; as to the ditches, the findings and decree are reversed, and the cause remanded with instructions to enter a decree in favor of the plaintiff company, in accordance with the views herein expressed.

### ON REHEARING.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

A rehearing has been granted at the request of both parties, the appellant having asked it of that part of our decision affirming the decree of the district court as to the reservoirs, and the appellees of that portion reversing it as to the ditches.

1. The appellant complains that we somewhat summarily disposed of that branch of the case pertaining to the reser-

voirs. We did so because at the time there seemed to be no occasion for much discussion, and, after additional argument, our former conviction is strengthened. This phase of the dispute is unaffected by any prior decree; and in the case of *The Water Supply and Storage Co. v. The Larimer & Weld Irrigation Co. et al.*, *ante*, p. 322, we have said concerning the appellant's reservoirs all that is necessary, much of which is pertinent here. The determination of the trial court was upon conflicting evidence; and the record disclosing that there was evidence to justify the finding, it will not be disturbed.

2. Concerning the ditch branch of the controversy, we observe that the case as made by the pleadings and evidence, and as argued upon the original hearing, turned upon the proper construction of the decree of April 11, 1884. At said hearing both parties conceded that it, taken in connection with the original decree of April 11, 1882, was the measure of their rights. Since then new counsel for appellees have appeared, and they try to shift the former position by attacking the decree of 1884 as void because the decree of 1882 being the first judgment, and, as is claimed, it having settled the rights of the parties, the second one, purporting to do the same thing, is of no validity. In neither contention is there any merit.

In the first place, the appellees cannot now be allowed to change front. But if they were, though the general legal proposition announced be correct, it has, under the facts of this case, no application whatever; for the record clearly shows that the decree of 1882 did not even purport to determine the priority of the appellees' ditch, but was intended to be only a conditional decree. The proceedings in which it was rendered were continued for further proof and further determination; and within the two years allowed by statute for a review thereof, either upon the same or additional testimony, the same court, in the same proceedings, with all the parties present, settled the very rights, — as appellees themselves formerly admitted, — by what it specifically called

a *final* decree, the meaning and effect of whose provisions it is the avowed object of the pending action to determine.

From this it is apparent, even if the decree of 1882 was, in form, absolute and unconditional, that it was within the jurisdiction of the court to change, modify, and correct its provisions. That under either, or both, of these decrees appellant's ditch rights are superior, has been sufficiently shown in the foregoing opinion.

Another contention by appellees is that these conflicting rights have never been settled, and all that this court can now do is to remand the cause to the district court to proceed to a determination thereof. The point is that since (if adjudicated at all) appellees' rights were determined by the decree of 1882 or 1884, or by both, and the rights of appellant by that of 1885, there was no contemporaneous adjudication, and as the facts upon which a decree in such proceedings must be rendered may be different at different times, the court had no jurisdiction to determine any of these rights at different times, and not until the evidence was all in, and then only by a single decree.

What was said hereinbefore we think a sufficient answer to this objection. We may add, also, that it is only too apparent from the record that, in so far as concerns the rights of these parties, the district court whose decrees purported to settle them had jurisdiction both of the subject-matter and of the parties, and that the several decrees were entered in the same proceedings, and, taken together, constitute the measure of these rights, and that in all its acts relating thereto the procedure of the court was regular and orderly.

Other questions discussed by counsel were sufficiently considered in the original opinion, and the same is, in all respects, adhered to.