IN BANC.
The complaint in this cause recites that pursuant to proper petition filed the state water board of the state of Oregon did, on the 6th of May, 1912, receive statements and proofs of claim pertaining to the relative rights to the waters of Powder river and its tributaries in Baker county, Oregon, among said tributaries being Blue Canyon creek and a stream known as Elk creek. It is alleged that among the claimants filing such statements and proofs of claim was defendant Thomas Mack. Plaintiff states that no objections or contests were made to or against the claims of defendant as to said Blue Canyon creek and Elk creek, and that thereafter, on November 17, 1915, the said *Page 588 
state water board duly made its final decree of adjudication and determination relative to the waters of Powder river and its tributaries, and filed the same with the county clerk of Baker county, and that final decree was by the circuit court of the state of Oregon for Baker county duly entered in said matter on March 18, 1918, and the water rights and claims of the said defendant were never questioned or contested. Plaintiff states that, on the 17th day of November, 1915, and continuously for a long period of time immediately prior thereto, such rights were perfected and developed water rights under the law of the state of Oregon, and the said Thomas Mack was, in and by the above mentioned decrees, declared to be the owner of the right to irrigate out of said Elk creek and Blue Canyon creek the lands in said complaint described, which rights were decreed to be as of the years 1870, 1894, 1905 and 1908.
It is alleged by plaintiff that a certain ditch was constructed from a point on the southerly bank of said Blue Canyon creek and just westerly from the east line of the northeast 1/4 of southwest 1/4 of section 8, township 10 south, range 39 east, Willamette meridian, in Baker county, Oregon, and thence southeasterly across said section, then across section 17 and onto section 16, said township and range, which ditch was locally known as the Graham ditch; that plaintiff has and claims certain rights and interests in said ditch, and any and all rights of the plaintiff in or to the waters of Blue Canyon creek are claimed by plaintiff through Graham ditch and from said Blue Canyon creek.
Plaintiff alleges that he is the owner of certain lands in the complaint described which, in their native *Page 589 
state, are arid, but which are susceptible of cultivation and irrigation and, when water is applied to the same for irrigation purposes, are highly productive; that, on September 19, 1917, plaintiff filed with the state engineer of the state of Oregon his application for a permit granting to plaintiff the right to use the waters of said Blue Canyon creek and of Poker creek, tributaries of said Powder river, and that a permit was duly issued granting to the plaintiff the right to appropriate sufficient of the waters of said Poker creek and Blue Canyon creek properly to irrigate the aforesaid lands to the extent of 108 acres thereof; that upon a showing made to the state engineer, the state of Oregon, on November 15, 1922, acting through its state water board and the proper officers thereof, did issue unto plaintiff a proper certificate of water right, wherein plaintiff was given the right to the use upon the lands described of 1.45 cubic feet per second of the waters of said Blue Canyon creek and Poker creek, said use to date from September 19, 1917, and to apply to the lands therein described. Plaintiff alleges that he is the holder of said water right, and that he has at all times since September 19, 1917, claimed and still claims the right to the use of the waters of Blue Canyon creek in so far as the same are available and necessary to supply the irrigation for the lands described, and to the extent of the acreage therein set out. He also alleges that he is the owner of an interest in said Graham ditch, and that his application for a permit to appropriate the said waters of Blue Canyon creek designates the aforesaid ditch as the means whereby the said waters by him so appropriated are to be diverted from said Blue Canyon creek to and upon the lands of plaintiff as therein described; that plaintiff has at all times and continuously, excepting when *Page 590 
interrupted as in his complaint alleged, since September 19, 1917, and continuously for a long time prior thereto, run sufficient of the waters of Blue Canyon creek from said point of diversion through said Graham ditch down to and upon the aforesaid lands to irrigate the same to the extent above set out.
Plaintiff further states that although defendant Mack made his claim to said waters of Blue Canyon creek as of the aforesaid years, and was decreed to be the owner of the right to the use of the waters thereof as set out, the said defendant has never at any time between the year 1908 and the month of September, 1922, used the said waters, or any thereof, as the same flow to the head of and into said Graham ditch, for the irrigation of the lands in said decrees described, or any part thereof, or for any purpose whatsoever; that said defendant ceased and failed to use the said waters, or any thereof, as the same flow to the head of and into the said Graham ditch, whether as awarded and adjudicated to him as therein described, or otherwise, for a period of more than five years immediately prior to the year 1922, and that said defendant had wholly abandoned the use of said waters, and all thereof, upon any of his said lands, and for any purposes whatsoever.
Plaintiff alleges that in the month of September, 1922, the state engineer of the state of Oregon and his deputies, acting under the direction and upon demand of defendant, did interrupt the use by plaintiff and his possession of the said waters aforesaid as flowing at and to the head of plaintiff's ditch and did take said waters therefrom and deliver the same over to the defendant over the objection and protest of plaintiff, said state engineer claiming to act under the terms of *Page 591 
the aforesaid final decree and adjudication and determination of the said state water board, and in conformity with the said decree of the circuit court of the state of Oregon for Baker county in the matter hereinbefore referred to. It is alleged that at various and sundry times since the month of September, 1922, and especially during the irrigation season of the year 1925, said defendant has demanded of said state engineer that said water be taken from plaintiff and turned to defendant, and said state engineer has on various occasions taken said water since said month of September, 1922, and has deprived the plaintiff of the use thereof as in his complaint alleged.
To the complaint of plaintiff the defendant filed a demurrer upon the ground that said complaint did not state facts sufficient to constitute a cause of suit against the defendant. This demurrer was sustained by the circuit court, and, the plaintiff refusing to plead further, plaintiff's complaint was dismissed and a judgment of dismissal rendered in favor of defendant and against the plaintiff. From the judgment of the court, this appeal is taken.
AFFIRMED. REHEARING DENIED.
There is but one question submitted to this court for decision. The recital by plaintiff shows that in the proceedings for determination of the water rights of defendant a decree so granting *Page 592 
to defendant the use of the waters in question was rendered on March 18, 1918. It is, in substance, alleged by the plaintiff that the defendant had not used the waters so granted unto him since the year 1908, and that the act of the defendant in interfering with the use thereof by the plaintiff was in 1922. It is the contention of plaintiff that, inasmuch as defendant had not exercised his right for a period of five years, there had been a forfeiture thereof and thereby it became abandoned and lost to the defendant. Plaintiff bases his claim upon the provision of § 5776, O.L., which is designated as the "Time Within Which Water Right may be Lost by Failure to Use Water Appropriated." This section reads as follows:
"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state, and whenever hereafter the owner of a perfected and developed water right shall cease or fail to use the water appropriated, for a period of five successive years, the right to use shall thereupon cease, and such failure to use shall be conclusively presumed to be an abandonment of such water right, and thereafter the water which was the subject of use under such water right shall revert to the public and become again the subject of appropriation in the manner provided by law, subject to existing priorites."
For the alleged reason that the defendant, although having granted to him on March 18, 1918, the decree of the court conferring the right to these waters, had not used the same since 1908, or exercised any authority over the same until his alleged wrongful taking thereof in 1922, plaintiff, by this proceeding, seeks to impeach and set aside the decree so entered.
It is necessary for the court not only to inquire as to the requirements of the water code of the state *Page 593 
of Oregon as to those who would secure from the state the exclusive right to the use of the waters of the state but also as to the rights inuring to defendant Thomas Mack through the decree heretofore rendered conferring the right to the use of the water now in dispute.
"It is well-settled law `that a judgment (or decree) rendered by a court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment so long as it stands unreversed and in force. On the other hand, a judgment which is absolutely void is entitled to no authority or respect and therefore may be impeached in collateral proceedings by any one with whose rights or interests it conflicts. By the weight of authority, whether a judgment is void or voidable is to be determined from an inspection of the record. If the record discloses the jurisdictional defect, the judgment is void; if it does not, the judgment is merely voidable': 34 C.J., § 815, pp. 511-514, cases cited."
We have not before us the record of the proceedings by which Thomas Mack was vested with the right to the use of the water which plaintiff claims has been lost to him (Mack) by reason of the alleged forfeiture thereof; but we take it that the fact relied upon is the said alleged failure of the defendant to use the water during the time before the entering of said decree and the time thereafter until the year 1922 as specified. The plaintiff maintains that said act of forfeiture *Page 594 
occurring before the decree was entered in defendant's favor may now be made a cause of suit to vacate and annul the judgment. This is the gist of plaintiff's contention, and upon the correctness of this legal principle his success herein depends.
The courts universally hold that a judgment or decree of a court of record is conclusive of every fact necessary to uphold it, of all matters actually determined, and, further, of all other matters which the parties might have litigated and settled as incident to and necessarily connected with the subject-matter of the litigation, as either claim or defense, and this rule applies to both trials and defaults: White v. Ladd, 41 Or. 324
(68 P. 739); 34 C.J. 909, § 1322.
The conclusiveness and effect of a judgment is alike applicable to a proceeding in rem, of which a proceeding under the laws of Oregon to procure a right from the state of Oregon for the use of its waters is one. It is conclusive and binding "upon all the world," that is, upon all persons who may have or claim any right or interest in the subject-matter of the litigation: 34 C.J. 1172, § 1663, cases cited.
Section 5750, O.L., provides that —
"The determinations of the board of control as confirmed or modified as provided by this act in proceedings shall be conclusive as to all prior rights, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."
In O'Brien v. King (Col.), 92 P. 945, it is said:
"The theory upon which the complaint is founded, as stated by counsel for appellee, is: (1) That appellant never perfected his appropriation to a greater extent than sufficient to irrigate two acres of land; *Page 595 
(2) an abandonment of his appropriation subsequent to the original decree. The facts relied on by appellee to support his first contention are, in substance, that, notwithstanding the appellant was granted a decree by which he was entitled to the use of two cubic feet of water per second of time, through the Castle Rock ditch, that his appropriation, when made was intended for the sole purpose of irrigating two acres of land for garden purposes, and at the time of his procuring the decree he owned but a small amount of land which could have been covered by said ditch, and that he had used the same to irrigate not exceeding one-fourth of an acre in extent. Over objection, the court below allowed evidence to be introduced in support of these averments. In this we think the court erred. These matters were not open to inquiry in this case. It has been frequently held that the volume of the priority awarded a ditch in the adjudication proceeding isres adjudicata, and none of the facts upon which the award is predicated can be inquired into in a collateral proceeding. * * *
"Under the well-settled rule laid down in the cases above cited, the court was without power or authority in this proceeding to nullify or modify the decree rendered in the adjudication proceedings as to the quantity of water awarded O'Brien, or in any other respect.
"The question therefore, as to whether or not O'Brien had abandoned wholly or partially his right to the use of the volume of water to which he was entitled under the decree, was manifestly not considered or properly determined by the court, in that the inquiry was not limited to acts on the part of O'Brien which occurred subsequent to the granting of the decree (P.V.I.Co. v. Central Trust Co., supra)."
Supporting the view that such decrees of adjudication are resadjudicata upon all questions of abandonment or quantity prior to such judgment, are the following authorities: 3 Kinney, Irrigation and Water Rights (2d ed.), p. 2878; 2 Wiel, Water Rights in the *Page 596 
Western States (3 Ed.), p. 1135, § 1233; Platte Valley Irr. Co.v. Central Trust Co. et al. (Colo.), 75 P. 391. is bearing on this subject, note the following from 2 Wiel, Water Rights in the Western States (3d ed.), where it is written at pages 1135, 1136:
"The decrees are not open to collateral attack. They are conclusive upon the parties. It has been frequently determined by the Colorado court that except as specially provided by statutes or in case of fraud, decrees rendered in statutory proceedings under the irrigation act are res adjudicata and conclusive upon the parties thereto and issues therein. * * * The decree is resadjudicata upon the question of abandonment prior to the decree. The district courts of Colorado act as courts of general jurisdiction in these matters, whose jurisdictional requirements will be presumed on collateral attack."
There seemed some question as to whether the Colorado court, in the exercise of such powers, was a court of limited or general jurisdiction, while no such question is presented here. The circuit court of Oregon, in the exercise of such powers, is a court of general jurisdiction, and the proceedings are, as nearly as may be, like those in a suit in equity, except that any proceedings, including the entry of a decree, may be had in vacations with the same force and effect as in term time: § 5745, O.L. The suit instituted by plaintiff is one brought to impeach and set aside said decree for alleged jurisdictional defects, and is in its nature collateral.
It is suggested that the rule as announced by the appellate court of the state of Colorado should not be regarded as persuasive inasmuch as that state has not a similar statute of forfeiture. However, the principle of law adopted is analogous in its application to the doctrine of res adjudicata. Confessedly, *Page 597 
the circuit court of Baker county was clothed with jurisdiction in the application of Thomas Mack for a decree investing him with the certain water privileges therein prayed for. The law as stated by the cases hereinbefore referred to in analysis we find to be, in effect, that among other things conclusively presumed is the fact that the court found, in rendering decree, that the right to the use of the water applied for had not been abandoned prior to the time of the rendition of judgment. Said decree precludes a retrial or reinvestigation of the facts touching an alleged forfeiture which is claimed to have occurred before judgment. This being true, it follows that the facts stated in plaintiff's complaint are insufficient to constitute a cause of suit.
The judgment is affirmed.
AFFIRMED. REHEARING DENIED.