Argued June 30; affirmed September 12, 1933

# MASTERSON *v.* PACIFIC LIVE STOCK CO. ET AL.
## (24 P. (2d) 1046)

*J. W. Biggs,* of Burns (J. E. Woolley and Vincent J. McGovern, both of San Francisco, Cal., on the brief), for appellants.

*Charles W. Ellis,* of Burns, for respondent.

BEAN, J. The testimony shows that the principal part of the lands of the defendants involved herein were irrigated from Cottonwood creek; that since the adjudication the successor in interest of the Pacific Live Stock Company has constructed a ditch in the N. E. ¼ of the N. W. ¼ of Sec. 5, T. 20 S., R. 36 E., W. M., a short distance above the ditch of the plaintiff. The only irrigation upon the lands of the defendants

by means of water from Otis creek prior to the adjudication was by overflow at times of high water. It will be seen by reference to the decree in the adjudication proceedings pleaded that the Pacific Live Stock Company was awarded a date of relative priority of 1884 for 165 acres to be used for irrigation, from Otis Ranch West Side Ditch. It is asserted by plaintiff, and the testimony tends to show, that no such ditch ever existed. The stream from which the water was to be taken is described as "Cottonwood and Otis". The decree does not specify or provide how much water should be taken from Cottonwood creek nor how much should be taken from Otis creek. In so far as the decree of adjudication determines and settles the rights of the respective parties, it is binding and conclusive. Section 47-619, Oregon Code 1930, provides that "The determinations of the state engineer, as confirmed or modified as provided by this act in proceedings, shall be conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination".

The proceedings adjudicating the rights of the waters of Malheur river were *in rem*. It is universally held by the courts that a judgment or decree of a court of record is conclusive of every fact necessary to uphold it, and of all matters actually determined. *Abel v. Mack,* 131 Or. 586, 594 (283 P. 8). The conclusiveness and effect of a judgment is alike applicable to proceedings *in rem,* of which a proceeding under the laws of Oregon to procure a right from the state of Oregon for the use of its waters is one. It is conclusive and binding upon all persons who may have or claim any right or interest in the subject matter of the litigation. 34 C. J. 1172, § 1663.

■ The question raised by plaintiff to the effect that the defendants have abandoned whatever right they have had is foreclosed by the adjudication decree.

In the adjudication of water rights of a river and its tributaries, like the Malheur river, where there are hundreds of parties interested, which consumes a long time in the survey and the taking of testimony and listing and describing the various rights of the water users, it is in no way strange that some features of a decree that should be included are omitted. We take the decree in the adjudication pleaded as a verity as far as it goes. That leaves the question of how much water should be taken from Cottonwood creek and how much from Otis creek under the award to the Pacific Live Stock Company, with the priority of 1884, 165 acres, still to be determined.

■ A decree is res judicata between the parties as to the issues only and not as to rights of the actual parties of which no issue was made. While res judicata upon all questions of abandonment or quantity prior to the decree, it does not affect abandonment subsequent thereto, since the decreed right may be lost in whole or in part by subsequent nonuse. Matters not adjudicated by the decree, or arising subsequent thereto, or demanding protection of decreed rights, may be sought in an independent proceeding. Rights not complete at the time the decree is rendered, the work being still in progress, are left open by the decree. The decree is not res judicata as to them. 2 Wiel on Water Rights (3d Ed.) 1137, § 1233. In *Waterman v. Hughes,* 33 Colo. 277 (80 P. 891), it is said:

"We have decided that in these special proceedings the court is without authority to award to a ditch or canal in advance of its completion any definite quantity of water. Water etc. Co. v. Tenney, 24 Colo. 344, 352,

51 Pac. 505. But we have not decided that it is wrong for the court to fix the date of the priority of a canal begun, but not completed, at the time the decree is rendered.''

A decree is not and cannot be considered as operating as an estoppel as to facts which did not occur or rights which did not accrue until after the particular judgment was rendered and which were not involved in the suit in which it was rendered. A decree is not conclusive upon any point or question which from the nature of the case, the form of the action, or the character of the pleadings could not have been adjudicated in the suit in which it was rendered; nor as to any matter which must necessarily have been excluded from consideration in the case as being beyond the jurisdiction of the particular court. 34 C. J. 932, et seq. §§ 1338, 1339; *Hunter v. Roseburg,* 80 Or. 588 (156 P. 267, 157 P. 1065).

■ Plaintiff claims fraud in obtaining the former decree for the reason that false representations were made to the court. False or perjured evidence clearly does not satisfy a showing of fraud. There may be a real cause, a real issue, a real trial, and therefore a real judgment, notwithstanding such evidence. No decision would be safe if a judgment could be attacked on such grounds in a collateral proceeding where the judgment is still in force. Bigelow on Estoppel (6th Ed.) p. 241.

■ In order that a judgment may be an estoppel as to a particular matter, it must appear either upon the face of the record or by extrinsic evidence that the same matter was in issue and determined in the previous action. It is not enough that the matter was in issue but it must clearly appear to have been adjudicated.

2 Freeman on Judgments (5th Ed.) § 689, 1455; *Adams v. Church,* 42 Or. 270 (70 P. 1937, 95 Am. St. Rep. 740, 59 L. R. A. 782) ; *Gentry v. Pac. Live Stock Co.,* 45 Or. 233 (77 P. 115).

■ In order to constitute such a decree res judicata and to bar a subsequent action there must be a concurrence of three conditions : First, the identity of the right sued for; second, the identity of the cause of action; third, the identity of the persons and parties to the action. Where these conditions are present, former decrees which are final and unreversed are res judicata of the subject matter of the suits as then decided between the parties thereto and their successors in interest, whether the court based its decree on a correct or erroneous view, either of the law or of the facts. They are not conclusive as to matters which might have been decided therein, but only as to such matters which were in fact decided. 3 Kinney on Irrigation (2d Ed.) § 1563, 2829.

All of the records in the adjudication proceedings are not before us. The defendants had read into the record testimony given in the adjudication proceedings upon which they claim the right involved in this suit was based.

The statute directing the mode of procedure in the determination of the water rights provides that it is the duty of the state engineer or his assistant to proceed at the time specified in the notice to the parties on said stream, to make an examination of said stream and works diverting water therefrom, said examination to include the measurement of the discharge of said stream and of the carrying capacity of the various ditches and canals, and examination of the irrigated lands; and an approximate measurement of the lands

irrigated from the various ditches and canals and to gather such other data and information as may be essential to the proper understanding of the relative rights of the parties interested. The observation and measurement is required to be reduced to writing and made a matter of record in his office, and it is the duty of the state engineer to make or cause to be made a map or plat showing with substantial accuracy the course of said stream, the location of each ditch or canal diverting water therefrom and the legal subdivisions of lands which have been irrigated. § 47-611, Oregon Code 1930. The state engineer is required to enter of record in his office findings of fact and an order of determination determining and establishing the several rights to the waters of said stream. The original evidence gathered by the state engineer and certified copies and measurements and maps of record in the state engineer's office, in connection with such determination, as provided by statute, together with a copy of the order of determination and findings, are to be certified by the state engineer and filed with the clerk of the circuit court where the determination is to be heard. § 47-612, Oregon Code 1930.

The circuit court upon hearing may modify or change such order of the state engineer where exceptions are filed and if no exceptions are filed the court will enter a decree affirming the determination of the state engineer, or the circuit court may require the state engineer to make a further determination. § 47-614, Oregon Code 1930.

It is clear that in the proceedings adjudicating the waters of the Malheur river, as to Otis creek the necessary proceedings were not all taken and the decree did not determine the quantity of water that should be

taken from Otis creek nor the quantity of water that should be taken from Cottonwood creek by the Pacific Live Stock Company under its award for 165 acres, with a relative priority of 1884.

■ The defendant George N. Hatt claims that at the time he purchased the land he was informed· that the company obtained water from both Cottonwood creek and Otis creek and that there was some sign of a dam in Otis creek, near the northwest corner of the land. Henry Dean, a witness for plaintiff, testified that he was running the Pacific Live Stock Company Otis Creek Ranch at the time George N. Hatt and his brother purchased the ranch under contract from the Pacific Live Stock Company, and that at that time there were no indications within his observation of any old ditches or dams in Otis creek by means of which any water had been taken from the creek to be used on lands on the east side of it, belonging to the Pacific Live Stock Company, "no more than beaver dams. Q. Were there any poles or anything in the creek up near the northwest corner of Lot 3? A. Yes, right at the fence, near Mr. Robertson's fence, the fence crosses the creek, there was an old beaver dam, and I laid a couple of poles across for a foot bridge". Hatt, at the time he made the contract for the land, obtained a copy of the decree and it did not show that any specified amount of water was decreed in favor of the Pacific Live Stock Company to be taken from Otis creek for the land. He was not warranted in relying on oral information that might seem different.

In order to adjust this suit, it is essential to determine what amount of water should be taken from Otis creek to irrigate the land under the award of the decree of the Pacific Live Stock Company, so as to carry out and enforce the adjudication decree.

There is some testimony showing that there was some natural irrigation or overflow at high water of part of the land in the N. E. ¼ of the N. W. ¼, Section 5, Township 20 S., R. 36 E., W. M., at different times prior to the adjudication, which was taken advantage of and accepted for a beneficial purpose of irrigating wild hay growing upon the land. Such irrigation could not have been equal to more than the irrigation of five acres in the regular way, under the provisions of the adjudication decree, as to the duty of water and general provisions of the decree. Except for such amount the plaintiff has sustained the allegations of his complaint for an injunction and with the exception of that quantity of water from Otis creek for five acres of land in the N. E. ¼ of the N. W. ¼, Section 5, Township 20 S., R. 36 E., W. M., to be taken out by means of the new ditch constructed by defendant Hatt since the adjudication decree was rendered, the balance for the 165 acres shall be taken from Cottonwood creek.

■ It is now well settled that where practically no artificial works for irrigation are necessary, the requirement of a valid appropriation that there be a diversion from the natural channel is satisfied, when the appropriator accepts the gift of nature, and indicates his intention to reap the benefits of natural irrigation. *Re Rights to Waters of Silvies River,* 115 Or. 27, 64 et seq. (237 P. 322).

With the exception as to water for said five acres, the decree of the lower court for an injunction is affirmed. The plaintiff, having practically prevailed in this suit, will be awarded costs and disbursements herein.

Rossman, Campbell and Bailey, JJ., concur.