Motion to substitute denied April 1; argued on the merits at Pendleton October 27; reversed December 2, 1941; rehearing denied February 3, 1942

ADAMS ET AL. *v.* PERRY ET AL.

(111 P. (2d) 838, 119 P. (2d) 581)

134

Before Kelly, Chief Justice, and Bailey, Lusk, Rand and Rossman, Associate Justices.

*Cochran & Eberhard*, of La Grande, for appellants.
*Hallock, Donald & Banta* and *Heilner, Smith, Grant & Fuchs*, all of Baker, for respondents.

KELLY, C. J. The statute provides that a cause of action arising out of an injury to the person dies with the person of either party, except when the death of a person is caused by the wrongful act or omission of another. Sections 8-901 and 8-903, O. C. L. A.

The statute also provides that—

"All other causes of action, by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter." Sec. 8-902, O. C. L. A.

The further provision of this statute is that—

"Where the cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives." Ibid.

■ A cause of action caused by diversion of a water course generally survives under the statutes, though not at common law. 1 C. J., Abatement and Revival, 193, sec. 359(d).

The instant case is a suit to quiet the title in plaintiffs in and to one-fortieth of a cubic foot per second for each acre irrigated by plaintiffs, as stated in their complaint, of the continuous flow of the water of Salmon creek, a tributary of Powder river.

In their second amended complaint herein, paragraph 8 thereof is as follows:

"That during the months of June and July of the year 1939, and at a time when plaintiffs required said water for irrigation, livestock and domestic purposes, and at a time when there was insufficient water flowing in said Salmon Creek to supply the said rights, appropriations and diversions of the plaintiffs, the defendants, Fred Perry and R. B. Bunch, unlawfully and without right thereto, and against the will and wish of plaintiffs, took and diverted all of the water of said Salmon Creek then flowing in said creek, amounting to about 86 miners' inches, and carried the same away from said creek and away from the ditches and diversions of plaintiffs and carried the same, by means of dams and ditches, to and upon lands in the possession of the defendant Fred Perry, and did thereby deprive the said lands of the plaintiffs and each of them of said stock, domestic and irrigation water, to the great damage and injury of plaintiffs and their lands, and the improvements thereon, and their growing crops, and said defendants continued unlawfully to so divert and carry away said waters during the months of June up

to the 5th day of July, 1939, all to the great damage of plaintiffs and each of them, and their irreparable loss.''

Paragraph 9 of said second amended complaint is as follows:

''That by reason of said unlawful acts of said defendants as aforesaid, large and valuable crops of pasture, vegetables and growing grain, fruit and grasses on the lands of plaintiffs and each of them, in the months of June and July, 1939, which needed irrigation for their proper ripening and maturing, became dried up, shriveled, lost and unfit for harvest or use. That the reasonable value of the use of said water during the time said defendants diverted and carried the same away was the sum of $1,000.00, and these plaintiffs have been irreparably damaged and have suffered loss in the sum of $1,000.00.''

In said amended complaint, ''plaintiffs pray for judgment against said defendants, Fred Perry and R. B. Bunch, in the sum of $1,000, and for costs and disbursements.''

■■ The above quoted allegations and excerpt from plaintiffs' prayer clearly indicate that defendant R. B. Bunch, in his individual capacity, was a party adverse to plaintiffs. In case of the death of such an adverse party after the final order by the trial court, before this court can acquire jurisdiction on appeal from a judgment or decree of the circuit court, there must be an appointment of an administrator or executor of the estate of the deceased and service upon or admission of service by such administrator or executor of plaintiffs' notice of appeal.

■ The trial of this case in the circuit court took place prior to June 10, 1940, on which date the trial judge rendered a written opinion on the merits. The defendant, R. B. Bunch, died on the 29th day of July, 1940.

The findings of fact and conclusions of law, as well as the final decree, were rendered on September 7, 1940, and entered on September 10, 1940. In that state of the record, the decree was not void. We cannot treat it as a nullity.

Section 1-311, O. C. L. A., provides that—

"In case of the death, marriage, or other disability of a party, the court may, at any time within one year thereafter, on motion, allow the action to be continued by or against his personal representatives or successors in interest."

The personal representative of the deceased defendant should be substituted in order that either service of the notice of appeal be made upon, or admission of such service be procured from, such personal representative.

■ The trespass charged in plaintiffs' second amended complaint, as above quoted, is in no sense such a course of conduct as to be chargeable against the deceased defendant's successor in office as water master, nor is it chargeable upon his son. Neither the deceased's successor in office nor his son could be deemed a successor in interest with respect to plaintiffs' alleged chose in action. An administrator de bonis non may be so considered. *Moss v. Ramsey*, 49 Okla. 499, 153 P. 843. We know of no authority to the effect that the relationship of parent and child renders the child a successor in interest within the meaning of the statute under consideration.

For these reasons, the motion to substitute deceased defendant's son is denied and the ruling upon defendant's motion to dismiss this appeal is reserved in order that appealing plaintiffs may have further opportunity to procure an order of substitution conformable to the views here expressed.

138

Argued at Pendleton October 27; reversed December 2, 1941; rehearing denied February 3, 1942

ON THE MERITS

(119 P. (2d) 581)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*Blaine Hallock* and *A. S. Grant*, both of Baker (Hallock, Donald & Banta and Heilner, Grant & Fuchs, all of Baker, on the brief), for appellant.

*George T. Cochran*, of La Grande (Cochran & Eberhard, of La Grande, on the brief), for respondents.

RAND, J. This suit was brought to obtain a judicial determination of a controversy existing between the plaintiffs and the defendant, Fred Perry, over their respective rights and priorities to the use of the waters of Salmon creek, a tributary of Powder river, for the irrigation of their respective farm lands. The settlement of this controversy involves the interpretation of a former decree of the circuit court for Baker county, which was rendered on March 18, 1918, in a proceeding brought under the water code of this state for the adjudication and determination of the relative

rights of all claimants to the waters of Powder river and its tributaries, in which proceeding all the parties in interest here, or their predecessors in interest, were parties.

At the time that decree was entered, one Charles W. Kelly was the owner of the N½ of the SE¼ and the NE¼ of the SW¼, section 5, T. 9 S., R. 39 E., W. M., and, by said decree, he was adjudged to have the right to divert, through the Pocahontas Mining and Irrigation Company ditch from Salmon creek and other streams therein mentioned, water for the irrigation of 86 acres of said land with a priority date of 1863 and, from the same source, water for the irrigation of 10 acres of said land with a priority date of 1905, and the right to use said water for irrigation purposes was, by said decree, made appurtenant to said land.

The quantity of water awarded by said decree for the irrigation of said lands was the continuous flow of 1/40th of a second-foot for each acre of said irrigated lands, when needed for the irrigation thereof. By mesne conveyances, the defendant Perry has acquired title to and is now the owner of said lands and water rights.

The decree of March 18, 1918, sets forth in tabulated form the name of every appropriator of the waters of Powder river and its tributaries, the date of their respective priorities, the number of acres irrigated by them, the use to which the water was to be applied and the stream or streams from which the same was to be taken, together with a description of each forty-acre tract of land irrigated by each and all of such appropriators, and, in said decree, was a separate tabulation containing such data of the water rights awarded

to each and all of the parties in interest in this suit or their predecessors in interest and the 1863 water right awarded to said Charles W. Kelly antedated by one year or more all water rights awarded to the plaintiffs or their predecessors in interest for the irrigation of their respective premises. The tabulation thus entered applicable to the lands now owned by the defendant Perry was as follows:

| Name and Postoffice Address of Appropriator | Date of Relative Priority | Number Acres | Use | Name of Ditch | Stream | Description of Land or Place of Use |
|---|---|---|---|---|---|---|
| Kelly, Chas W. Baker, Oregon Finding(#95 & 100) | 1863 1905 | 86 10 | Irrigation | Pocahontas Mining & Irrigation Co. | Marble & Mill Creeks McCord Gulch and Spring Salmon Creek | 26 acres in NE¼SW¼ 38 acres in NE¼SE¼ 32 acres in NW¼SE¼ Section 5 T 9 S.R.39 E.W.M. |

Finding No. 95, referred to in said tabulation, relates to matters which are wholly immaterial to the questions involved here.

Finding No. 100, also referred to in said tabulation, reads as follows:

"That the Pocahontas Mining and Irrigation Company has the following stockholders and users from its ditch, James Akers, J.M.Bowles, Dorcas A.Brown, Julia A.Brown, John Cavin, James Cavin, P.Crabill, Hugh Doherty, Harlow J.Evans, Heman E.Jordan, Mary E.Jordan, Charles W.Kelly, James A. Kelly, W.B.Landreth, Freta Morin, Ella M.Osborn and M.E. Roberts.

"That the lands irrigated by each of said stockholders are described in the tabulation. That James Akers, J.M.Bowles, Dorcas A.Brown, W.B.Landreth and Ella M.Osborn have rights only through the Pocahontas Mining & Irrigation Company's Ditch from Marble and Mill Creeks; that Julia A.Brown besides having rights from Marble and Mill Creeks, has rights from Spring Creek, McCord Gulch and a spring; that John Cavin has rights from Cavin Springs and Roberts Springs; that James Cavin has rights from Cavin Spring; that P. Crabill has rights from Spring Creek, Crabill Swamp and springs, and Kelly and Cavin Springs; that Hugh Doherty has a right from Goodrich Creek through Doherty Ditch. Harlow J.Evans, Heman E.Jordan and Mary E.Jordan have rights from Salmon Creek; that Charles W.Kelly has rights from McCord Gulch, a spring, and Salmon Creek; that James A.Kelly has rights from Kelly Spring, Spring Creek, Cavin and Crabill Springs; that Freta Morin has rights from Morin Springs, and W.E.Roberts has rights from Roberts Springs, as shown in the tabulation.

"That the water appropriated by said Pocahontas Mining and Irrigation Company for all of the lands irrigated under said ditch is limited to 500 miners inches, equal to 12.5 second feet. That the water in the

ditch shall be distributed according to the dates as shown in the tabulation, except, that the rights of Julia A. Brown shall be to a continual flow of ten miners inches, or one-fourth of a second foot, prior to all other water users, and the waters shall be distributed in accordance with the agreement and stipulations as shown in the claim filed by the Pocahontas Mining and Irrigation Company, provided, that the water master shall have the power and right to change such method of distribution in case a better system be established.

"The Pocahontas Mining and Irrigation Company has at all times recognized the rights of the City of Baker as tabulated in Finding #15 herein, and entered into an agreement with said City of Baker as set forth in said Finding #15. That in the division of water of said creeks, from the making of said agreement up until the time of the decree of the Supreme Court of the State of Oregon in the case of Sherred v. City of Baker, 63 Or. 28, the right of said City of Baker to lease and sell the water claimed by the rights so owned by said City of Baker, was recognized by said Pocahontas Mining and Irrigation Company, and the water was divided between the purchasers of said water from said City of Baker and said Pocahontas Mining and Irrigation Company in accordance with said agreement. That all other water users from Marble and Mill Creeks, developed and improved their farms and places under the condition so created by said agreement; that the extent of the appropriation of said Pocahontas Mining and Irrigation Company is therefore limited by such agreement, and when the water flowing in Marble Creek is below 500 miners inches, one-half thereof shall be delivered to the Pocahontas Mining and Irrigation Company, and when the water flowing in Mill Creek is below 500 miners inches, only one-half thereof shall be delivered to said Pocahontas Mining and Irrigation Company, the other half of said waters of said creeks shall be delivered to all the other water users in accordance with the dates of priority.

"That in case there be not sufficient users to utilize the half of said waters so diverted either to or from said Pocahontas Mining and Irrigation Company, the water master shall make such a division as will utilize the whole flow of said streams."

The decree further provides:

"In all cases in this decree wherein the right to use water out of more than one stream for the same land is confirmed, the amount of water herein determined for said right may be used out of either or both of said streams, so long as the amount of water taken does not exceed the volume named in this decree, and does not interfere with other rights of priority, and each stream may be used to supplement the other in furnishing said amount of water, provided that any diversion from any stream shall not exceed the amount of the appropriation from that stream."

"That the rights of appropriation hereby confirmed are appurtenant to the lands herein described for irrigation purposes, and the rights of use of the waters of said stream and its tributaries by virtue of such rights of appropriation, are limited and confirmed to the irrigation of the lands herein described to the extent of said lands as herein set forth, and the priorities herein confirmed confer no right of use of the waters of said stream, and its tributaries, on the lands other than those specified tracts to which such rights of appropriation are herein set forth as appurtenant, and each and every person shall be and hereby is prohibited, restrained and enjoined from diverting and using water from said stream on such other lands without lawful permit."

The decree further provides for the appointment of a water master who should be charged with the duty of distributing the waters of Powder river and its tributaries to the various claimants in the order of their respective priorities and in the quantities fixed and determined by said decree. R. B. Bunch,

the codefendant herein, at and for several years prior to the commencement of the present suit was water master and charged with the performance of such duties.

As stated above, Charles W. Kelly, Perry's predecessor in interest, was awarded an earlier priority, for the irrigation of 86 acres of his land, than that awarded to any of the plaintiffs in this suit. The decree also expressly provided that the water for the irrigation of said land was to be obtained not by any diversion to be made by Kelly from the waters of Salmon creek and the other streams mentioned in the Kelly tabulation but was to be diverted from said streams by the Pocahontas Mining and Irrigation Company, which company, under the decree, was awarded the right to divert the water from said streams for the benefit of Kelly and the other stockholders of said company. Said company was also charged by said decree to furnish to its stockholders the water thus diverted for the irrigation of their respective premises in the order of their respective priorities and in the amounts fixed by the decree. Kelly, therefore, was entitled, under said decree, to divert from the Pocahontas Mining and Irrigation Company ditch the quantity of water awarded to him for the irrigation of said 86 acres of land before any of the plaintiffs, or their predecessors in interest, were entitled to receive any water through said ditch for the irrigation of the lands now owned by them.

The plaintiffs, however, contend that they should be permitted to go behind the decree of March 18, 1918, and show that, for some nine years prior to its rendition, they, and not Kelly, were using the waters of Salmon creek for the irrigation of their respective

premises and, for that reason, Kelly was not entitled to the award made by said decree.

■■ Over objections, the court below allowed evidence to be introduced in support of their contention. In this the court erred. Those matters were all settled and determined by the decree entered in the adjudication proceedings. It is well settled that an issue once determined in a court of competent jurisdiction cannot again be litigated between the same parties. This suit is between the same parties, or their privies, and is upon the same claim or demand as that involved in the water adjudication proceedings and the decree there entered was upon the merits. That decree, therefore, is an absolute bar and concludes the parties and their privies as to any matter that was actually litigated and as to any other matter that might have been litigated and, hence, is conclusive upon all the parties to this suit as to all matters arising prior to the entry of the decree. *La Follett v. Mitchell*, 42 Or. 465, 69 P. 916, 95 Am. St. Rep. 780; *Ruckman v. Union Railway Co.*, 45 Or. 578, 78 P. 748, 69 L. R. A. 480; *First Nat. Bank of Burns v. Buckland*, 130 Or. 364, 280 P. 331, and authorities there cited. See also *Abel v. Mack*, 131 Or. 586, 595, 283 P. 8, and authorities there cited.

Moreover, the adjudication under which the former decree was rendered was a proceeding in rem and was brought pursuant to and in conformity with the water code of this state—sections 116-801 to 116-823, O. C. L. A.; and section 116-819 provides:

"The determinations of the state engineer, as confirmed or modified as provided by this act in proceedings, shall be conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."

Thus, by force of the statute and also under well settled principles of law, which are independent of the statute, all controversies as to all matters which existed or occurred before the entry of the decree of March 18, 1918, and which were litigated or could have been litigated in the adjudication proceedings, are settled and determined by that decree and are no longer open to question by any of the parties to that litigation or their privies.

■ This also disposes of plaintiffs' contention that, because of an alleged omission in Kelly's statement and proof of claim, the court had no jurisdiction to make an award for the irrigation of said 86 acres of land. In this connection, however, it may be well to state that Kelly only claimed the right to divert from Salmon creek water for the irrigation of 10 acres of his land and that, as to the 86 acres, he claimed and was awarded the right to irrigate the land from the water appropriated by and awarded to the Pocahontas Mining and Irrigation Company, which company was charged by the decree to distribute the waters appropriated by it from Salmon creek and the other streams mentioned in the decree to its stockholders, in the order of their respective priorities and in the quantities fixed by the decree.

■ The plaintiffs also contend that, since March 18, 1918, they have been in the adverse use and enjoyment of the waters awarded to Kelly for the irrigation of said 86 acres of land and that the title to the use of such water has become vested in them by prescription. We find no evidence in the record to sustain this contention. It is true there is some evidence that at times the water has been taken from Perry by the water master and allowed to flow down the ditch of the Po-

cahontas Mining and Irrigation Company for use by the plaintiffs below. Whether such action was at any time an invasion of Perry's rights we shall not stop to inquire for the evidence clearly shows that it was only temporary and that during all of said period of time Perry and his immediate predecessors in interest have grown crops every year on said 86 acres of land and have had full use of sufficient of the water awarded to Kelly when needed for the irrigation of said land. Moreover, as above stated, the water master, by said decree and under the statute, is authorized to distribute these waters according to the terms of the decree, and the decree expressly provides for his establishing a system of rotation among the different water users of any stream involved in the adjudication. For these reasons, we hold that, under the evidence, the rights awarded to Kelly have not been lost or destroyed by anything done since March 18, 1918, and that Perry is now fully entitled to the use thereof.

In respect to all the matters above referred to, the provisions of the former decree, rendered in the adjudication proceedings, are clear and specific and no uncertainty exists as to the meaning of any said provisions. Notwithstanding this, the trial court held that, because the quantity of water to be taken from Salmon creek and the other streams mentioned in the tabulation was not specified in the decree, the decree was indefinite and uncertain and, therefore, subject to interpretation, and entered a decree enjoining the defendant Perry from the use of any water of Salmon creek for the irrigation of his 86 acres of land under any priority right earlier than that of 1905, obviously basing his ruling upon the decision rendered in *Masterson v. Pacific Livestock Company*, 144 Or. 396,

24 P. (2d) 1046. That decision was inapplicable here for the reason that, under the express terms of the former decree, adjudicating these waters, it expressly provides that, where water is awarded from more than one stream, it may be taken from either or any of said streams so long as such taking does not interfere with the prior rights of some other person. Moreover, as appears from said decree and the findings which were incorporated in it, it clearly appears that the water, which was awarded to Kelly and was to be applied in the irrigation of 86 acres of his land, was to be taken from the ditch of the Pocahontas Mining and Irrigation Company and was not dependent upon any separate appropriation or diversion by Kelly from any of said streams but under an award which was made to that company for the benefit of Kelly and the other stockholders of the corporation and, since that company was authorized by the decree to take all or any part of its appropriations from either or any of said streams so long as the rights of third parties were not interfered with, it was wholly unnecessary that the decree should state the amount or quantity of water which the company was to take from Salmon creek or any other of said streams. Hence, there was no basis for holding that the decree adjudicating these waters was subject to interpretation. On the contrary, it was the duty of the court to enforce that decree in accordance with its terms.

For these reasons, the decree appealed from is reversed and the cause remanded to the court below with directions to set aside the injunction and to dismiss the suit as to all the plaintiffs, but without costs to any of said parties upon this appeal. It is so ordered.