braced in the record, and it does not appear that upon such final submission the appellant limited himself as he had done in his motion to dismiss. We are bound, therefore, to consider every question which is raised by his exception to the decision. Under these circumstances, the want of proof in regard to the fraud alleged in the complaint, or the existence of property not alleged in the complaint, seems to be available to the appellant.

We think the judgment was erroneous, and should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.

---

VAUGHN MACH. CO. v. QUINTARD et al.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

1. GUARANTY—CONTRACT—CHANGE—DISCHARGE OF GUARANTORS.
     Plaintiff contracted to furnish the C. Co. with certain tanning machinery, including "one vacuum pan, size and description to be furnished." After the execution of the contract the company requested plaintiff to procure a pan other than that contemplated, the cost of which was much greater than that intended. Plaintiff agreed to furnish it, provided defendants, who had guarantied the contract, would become liable for its payment. The company failed to procure such guaranty, and plaintiff refused to supply the more expensive pan, and the company refused to accept any other. *Held*, that the contract was not changed by the subsequent negotiations so as to release defendants from liability for the machinery delivered.

2. SAME—PRIMARY LIABILITY.
     Defendants agreed that the C. Co. should give its notes for machinery purchased, which they would guaranty, and in default thereof agreed to become liable, and pay plaintiffs the amount due on the contract. *Held* that, the notes not having been given as provided, defendants became primarily liable, and not merely as guarantors.

3. SALES—PARTIAL NONPERFORMANCE—EXCUSE.
     Where a vendee demands an article of a different size and value from that contemplated by the contract, and refuses to accept the article intended, the vendor is excused from performance as to that part of the contract.

4. REVIEW—EVIDENCE—WAIVER OF OBJECTIONS.
     Where, in an action on a contract, plaintiff alleged full performance, but the case was tried on the theory of an excuse for partial nonperformance, defendant cannot object for the first time on appeal that evidence in support of such theory was not within the issues.

5. GUARANTY—EVIDENCE—DECLARATIONS OF CO-GUARANTOR.
     Where defendants were sued as guarantors of a contract by a corporation, declarations by the corporation's general manager, who was also one of the guarantors, tending to show performance on plaintiffs' part, or an excuse for a partial nonperformance, are admissible as against defendants.

6. REVIEW—EVIDENCE—PREJUDICIAL ERROR.
     Evidence properly excluded, though on an erroneous ground, is not prejudicial error.

Appeal from trial term, New York county.

Action by the Vaughn Machine Company against Edward A. Quintard and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Robert A. B. Dayton, for appellants.

N. T. M. Melliss, for respondent.

BARRETT, J. This action was to recover the reasonable value of certain machinery furnished by the plaintiff to a company known as the Climax Quick-Tanning Company under a contract between the plaintiff and the present defendants, to which the Climax Company was not a party. The contract recites: First, that the Climax Company is the owner of a certain process for the tanning of hides, skins, and pelts, which process is protected by letters patent, and that it is desirous of having erected in the city of New York a complete plant, to be operated under said letters patent; second, that the parties of the second part (the present defendants) desire that the Vaughn Machine Company (this plaintiff), party of the first part, shall erect and install and complete, ready for operation, in a building in the immediate vicinity of New York City, a full and complete plant for the tanning of such hides, skins, and pelts. Then follows a specification of the machinery of which such plant is to consist. The only item of this machinery to which we need now refer is "one vacuum pan, size and description to be furnished." The main question in dispute hinges upon this single item. It is conceded that the plaintiff delivered the other specified items to the Climax Company, and the only question upon the trial with regard thereto was as to their reasonable value. The principal questions litigated below and presented here relate to the performance of the contract. The appellants contend that they were sureties for the Climax Company, that the contract was altered in a material respect by the plaintiff and that company without their consent, and that, even if it was not so altered, the plaintiff failed to perform what the contract called for.

In the view we take of this case, it is immaterial whether the defendants were principals or sureties. The machinery was to be furnished to the Climax Company. That included a vacuum pan of a "size and description to be furnished." This plainly indicated that such size and description were to be furnished by the Climax Company. Following the recitals to which we have referred, the contract reads that the Vaughn Machine Company agrees to furnish the specified machinery, and install the plant for the Climax Quick-Tanning Company, and also to furnish such other materials in its line "that may be necessary, as called for by John H. Carruthers, general manager" of the company. It is clear, therefore, that the plaintiff was to look to the Climax Company, and not to these defendants, for the size and description of the vacuum pan which it was to furnish under the contract. No alteration of the contract with regard to this vacuum pan was shown. It is averred in the complaint, and admitted —by not denying—in the answer, that the Climax Company proposed to the plaintiff such an alteration, and that the latter agreed thereto, but only upon a proviso which was never fulfilled. The entire "fourth" paragraph of the complaint is thus admitted. It is there

alleged that after the execution of the contract the Climax Company requested the plaintiff to procure, in lieu of the vacuum pan ordinarily used in tanneries, and the kind contemplated by the terms of said contract, and therein mentioned, the cost of which would not have exceeded the sum of $500, a vacuum pan of an entirely different kind, the cost of which would be about $5,500; that the plaintiff agreed to this, provided the Climax Company would procure a further agreement from these defendants to become liable for its payment; that the Climax Company failed to procure such further agreement from these defendants; and that the plaintiff accordingly refused to supply the $5,500 vacuum pan. This was but a conditional modification of the original contract, and the latter remained throughout in full force and effect. The proposed modification never reached the point of finality; and when the plaintiff, in the fifth paragraph of its complaint, avers performance "in accordance with the terms of said agreement so modified as aforesaid," it plainly refers to this conditional and incomplete modification. The plaintiff required, not only the consent of the defendants to the proposed modification, but their absolute agreement to pay the price of the more expensive vacuum pan. It follows, therefore, that, even if these defendants were but sureties, their contract has not been affected, nor were they released from its liability. There was, however, no trace of a guaranty in the covenant to pay the amount due the plaintiff, upon default in the procurement of the Climax Company's notes. The total amount to be paid for the machinery was not to exceed $12,000, and the plaintiff agreed to accept in payment the Climax Company's notes. The defendants agreed that the notes should be given within 10 days from the time of the completion of the work, and, when so given, to guaranty their payment. If not so given, however, "in default thereof" (to quote the words of the contract), "they hereby agree to become liable and pay the amount due to said party of the first part [the plaintiff] upon the above-named contract." Notes not having been given as thus called for, the defendants became personally liable upon this direct covenant to pay.

We agree with the appellants that, as the contract was not modified, the plaintiff was bound to perform it in all particulars. It was consequently bound to deliver one vacuum pan, size and description to be furnished by the Climax Company. It is conceded that it did not do this, and the defendants thereupon make their last point, namely, that they are not liable, for the reason that the plaintiff failed fully to perform. The answer to this contention is: First, that the Climax Company furnished the size and description of an entirely different vacuum pan from that concededly contemplated by the contract, —a vacuum pan such as the plaintiff had never agreed to deliver, and which it was only willing to deliver in case the defendants were willing to bind themselves for its payment; and, second, that the Climax Company absolutely refused to accept such a vacuum pan as the defendants admit was contemplated by the contract. The contract was made on the 15th day of August, 1896, and on the 25th day of the next month the Climax Company, by the defendant Carruthers, as its general manager, wrote to the plaintiff a letter in which

it stated that it would not under any circumstances accept a vacuum pan smaller than six feet in diameter. This referred to the $5,500 pan, which had been the subject of the proposed modification. The proof was undisputed that the pan contemplated by the contract would not have exceeded two feet in diameter. It was certainly a much smaller and cheaper pan than that referred to in the letter. The plaintiff, therefore, was excused from performance with regard to the specific item in question. It is true that it pleaded full performance, and not an excuse for partial nonperformance; but the case was tried upon the latter issue, and the testimony upon the subject was put in without objection. The defendants cannot now be permitted to make the point that this testimony was not within the issues. Had they made the point below, the trial court would undoubtedly have permitted an amendment. Having tried the case, without complaint or objection, upon the question whether the plaintiff, under the circumstances, was excused from delivering the particular vacuum pan referred to in the contract, they are bound by the result.

The exceptions taken by the defendants to the learned trial justice's rulings are unsubstantial. The defendants Quintard, Wall, and Brown objected to certain declarations of Carruthers, upon the ground that, although jointly liable with him, they were not his partners. These declarations, however, were not as a joint covenantor with his co-defendants, but as the general manager of the Climax Company. They would have been admissible if made by a general manager of the Climax Company, who was an entire stranger to the contract. The contract, as we have seen, was to be performed for the benefit of the Climax Company, and the machinery delivered to it. What that company called for under the contract was admissible to show performance, and what it refused to accept was equally admissible to show an excuse for nonperformance. Upon either head, the declarations of its general manager were admissible. For the same reason, the submission to the jury of the question whether Carruthers represented the defendants was of no moment. They were bound by his declarations only in the sense to which we have referred; and he did not attempt to bind them in any other manner.

There is nothing in the exceptions as to the measure of damages, and the criticism upon the learned judge's language on that head is quite hypercritical. The question of the reasonable value of the machinery actually furnished under the contract was fairly submitted to the jury, in language which they could not have misunderstood, and which was substantially correct.

The only other exception calling for consideration was to the refusal to admit evidence of a conversation had by Carruthers with the plaintiff's president, several months before the contract was executed, in which the company's price at that time for one of the machines in question was mentioned. The evidence was excluded upon an erroneous ground. It was, however, properly excluded. It was offered avowedly to contradict the witness George C. Vaughn, who was the plaintiff's president. After referring to the fact that this latter witness had testified upon the subject of value, the defendants' counsel

stated that he was seeking to prove by Carruthers statements "in contradiction of that." These statements had not been called to the attention of Vaughn upon his examination, and it was not proper to contradict his testimony on that head without giving him an opportunity of explanation. Then, too, the conversation related to but a single item, as to which two witnesses for the plaintiff had given independent evidence of reasonable value, while the defendants gave no evidence upon the subject of the reasonable value of this particular item. If offered, therefore, as an original declaration, the fact was too remote and trivial to affect the result.

The judgment and order denying the defendants' motion for a new trial should therefore be affirmed, with costs. All concur.