Argued at Pendleton May 4; affirmed June 16; rehearing denied
July 7, 1942

# BULL *v.* SIEGRIST ET AL.

(126 P. (2d) 832)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*George T. Cochran*, of La Grande (Cochran & Eberhard, of La Grande, on the brief), for appellant.

*S. H. Burleigh*, of La Grande (E. R. Ringo, of La Grande, on the brief), for respondents.

RAND, J. The plaintiff is the owner of the NE¼ of the NE¼ of section 22 and the N½ of the N½ of section 23, T. 1 S., R. 38 E., W. M. These lands are now and heretofore have been irrigated entirely from the flow of certain described springs which rise on or immediately above plaintiff's land. He also uses the water flowing from these springs for stock and for domestic use.

The defendants, as successors in interest of one G. I. Wade, are the owners of an adjoining tract of land consisting of 400 acres lying immediately south of the lands owned by the plaintiff. These premises are irrigated by the waters of End creek by means of two ditches leading therefrom, one constructed at a very

early date and the other, which is the upper of the two ditches, in 1923.

Both tracts of land are on the east slope of Mt. Emily at an elevation slightly above the floor of the Grande Ronde valley proper and are comparatively level. End creek is a small stream which heads on Mt. Emily and flows through the lands of the defendants but does not flow over or across the lands of the plaintiff. It is fed by the melting of snow and has an early run-off and generally goes dry in the early part of June of each year. It is a tributary of the Grande Ronde river.

In an adjudication proceeding brought in the circuit court for Union county, under and pursuant to the provisions of the water code, entitled: "In the matter of the determination of the relative rights of the various claimants to the use of the waters of Grande Ronde River above the mouth of Gordon Creek and of all its tributaries above said point, including Gordon Creek, except Mill Creek, heretofore adjudicated, in Union County, Oregon", a final decree was entered on August 8, 1925, which settled and determined, as between the parties hereto, their respective rights to the use of the waters involved in this litigation for the irrigation of their premises and made the same appurtenant to the lands now owned by the parties hereto. The springs in question here and End creek are above the mouth of Gordon creek and, as stated, End creek is one of the tributaries of the Grande Ronde river. In and by said adjudication and decree, the rights awarded to the premises now owned by the plaintiff for the irrigation of said land and those of G. I. Wade, predecessor in interest of the defendants, are specifically stated as follows:

| Name and Postoffice Address of Appropriator | Date of Relative Priority | No. Acres | Use | Name of Ditch | Streams | Description of land or place of use |
|---|---|---|---|---|---|---|
| Buell, H.E. Buell, W.A. Buell, Ivy May Buell, Mrs. W.H. Summerville, Oregon. | 1889 | 180 | Irr. | Unnamed ditches | Springs Tributary to Willow creek | 20 acres in NE$\frac{1}{4}$NE$\frac{1}{4}$ section 22 40 acres in NE$\frac{1}{4}$NE$\frac{1}{4}$ 40 acres in NW$\frac{1}{4}$NE$\frac{1}{4}$ 40 acres in NE$\frac{1}{4}$NW$\frac{1}{4}$ 40 acres in NW$\frac{1}{4}$NW$\frac{1}{4}$ section 23 T 1 S R 38 E W.M. |
| Wade, G.I. Summerville, Oregon. | 1863 | 279 | Irr. | Wade's | Erd creek and unnamed creek and springs | 40 acres in SW$\frac{1}{4}$NE$\frac{1}{4}$ 7 acres in SW$\frac{1}{4}$NW$\frac{1}{4}$ 40 acres in SE$\frac{1}{4}$NW$\frac{1}{4}$ 40 acres in NE$\frac{1}{4}$SW$\frac{1}{4}$ 20 acres in NW$\frac{1}{4}$SW$\frac{1}{4}$ 10 acres in SW$\frac{1}{4}$SW$\frac{1}{4}$ 40 acres in SE$\frac{1}{4}$SW$\frac{1}{4}$ 40 acres in NW$\frac{1}{4}$SE$\frac{1}{4}$ 40 acres in SW$\frac{1}{4}$SE$\frac{1}{4}$ section 23 2 acres in NE$\frac{1}{4}$SW$\frac{1}{4}$ section 22 T 1 S R 38 E.W.M. |

It is conceded that the name ''Buell'' was misspelled in the decree and should have been ''Bull''.

It will thus be seen that the springs, the flow of which was awarded to the plaintiff for the irrigation of his land, were adjudicated to be tributaries to Willow creek and not End creek and, from this, it appears that these springs were adjudicated to be in the watershed of Willow creek and not in the watershed of End creek.

It also appears from plaintiff's exhibit 6, which is the statement and proof of claim filed by H. E. Bull, the plaintiff herein in said proceedings answered under oath, as follows:

''1. Q. What is claimant's name and postoffice address? If a corporation, give the place of incorporation and the authority by which you make this proof. A. H. E. Bull, W. A. Buell, Mrs. W. H. Bull, Ivy May Bull.

2. Q. Do you claim a right to the waters of the above named stream or a tributary thereof? If from a tributary, give its name. A. Yes. Tributary of Willow Creek.

3. Q. What is the the nature of the right or use on which this claim to the waters of said stream is based? A. Irrigation, domestic & stock.

4. Q. How was such right initiated, or upon what is it based? A. Appropriation.

5. Q. State the date of the initiation of such water right. A. 1889.

6. Q. What steps were taken by this claimant or his predecessor in interest to initiate said right? Answer fully, attaching separate sheet if necessary. A. Ditches used to collect water from springs and then diverted and used.

7. Q. When was water first used for irrigation, or other beneficial purposes? A. 1889.

8. Q. State the means of utilizing such water, giving the name by which the ditch is most commonly known, if a ditch is used. A. Ditches.''

Section 116-819, O. C. L. A., makes the determination of the state engineer, as confirmed or modified by the court, conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination.

In considering this statute and the effect of the adjudication when determined by a final decree therein, it was held in *Abel v. Mack*, 131 Or. 586, 283 P. 8:

"The conclusiveness and effect of a judgment is alike applicable to a proceeding in rem, of which a proceeding under the laws of Oregon to procure a right from the state of Oregon for the use of its waters is one. It is conclusive and binding 'upon all the world', that is, upon all persons who may have or claim any right or interest in the subject-matter of the litigation: 34 C. J. 1172, § 1663."

To the same effect, see *Ebell v. City of Baker*, 137 Or. 427, 299 P. 313, and *Adams v. Perry*, 168 Or. 132, 119 P. (2d) 581.

In his complaint, the plaintiff alleges, in substance, that the springs in question are fed by currents of water flowing underground from End creek in known and defined channels and that, by reason of defendants' diversion of the waters from End creek through their upper ditch, the flow of the springs has been materially decreased from what it was in former years and that, as a result thereof, he has been deprived of sufficient water for the necessary irrigation of his premises and for stock and domestic use.

The answer denied these allegations and, in substance, alleged as a bar to this suit that the respective rights of the parties hereto were settled and determined by the decree in the adjudication proceedings and that,

since the plaintiff and his then co-owners made no claim and no right was awarded to them to use the waters of End creek for the irrigation of their premises, the plaintiff is now and of right should be estopped to assert any claim to the water flowing in End creek.

This presents two questions for determination: (1) Is the plaintiff estopped by the decree from asserting a claim to the waters of End creek, and, if not, (2) Does the evidence establish the fact that plaintiff's springs are fed by water flowing underground from End creek in a known and well-defined channel?

■■ It is, of course, well settled, as held in *Hayes v. Adams*, 109 Or. 51, 218 P. 933, that water flowing underground in a known and well-defined channel is not percolating water but constitutes a water course and is governed by the law applicable to surface streams and not by the law applicable to percolating waters. The rule applicable thereto is stated by Farnham on Water and Water Rights, vol. 3, 1904 ed., section 936, as follows:

"The rule that one may make such reasonable use of his own property as he chooses, regardless of the effect on the percolating water, operates with full force although the effect is to destroy a spring on a neighbor's land, unless the spring is supplied by water flowing in a known channel."

■ There is no provision in our statute requiring a claimant to the waters of a spring for the irrigation of his lands or for domestic use or stock purposes to specify in his claim the source from which the spring receives its water unless, of course, the spring is situated in the bed or channel of a running stream. Here, the evidence shows that these springs are situated some distance from End creek and in a different watershed

from that of End creek, they being tributaries of Willow creek, as stated by plaintiff in his statement and proof of claim. The word "tributary" is defined by Bouvier as "all streams flowing directly or indirectly into a river". This, of course, makes it in the particular watershed in which it flows. There can be no more reason for a claimant of water flowing from a spring to state the source from which the spring derives its water than for one who diverts water from a named stream to state the source from which its water is derived. The question, therefore, of the source or sources from which these springs were fed was not in issue nor was it decided in the water adjudication. The right claimed by plaintiff and his co-owners was a right to divert the water from those springs as they then existed and not from any source or sources by which they were fed. Since that question was not in issue in those proceedings and was not decided by the decree entered therein, we hold that the plaintiff was not precluded by said decree from asserting and establishing if he could in this suit that said springs are fed by waters flowing underground from End creek in known and defined channels. Hence, the doctrine of res adjudicata is not involved in this suit.

█ We find no satisfactory evidence showing or tending to show from what source the springs in question are fed. So far as the evidence shows the source of these springs is purely a matter of guess. It is undisputed that a slight ridge or elevation of ground lies between the springs and the channel of End creek. It is undisputed that the defendants' upper ditch was constructed in 1923 and that water has been diverted from End creek by means of that ditch every year since that time.

In his testimony, the plaintiff states that the shortage in the water flowing from the springs commenced in the year 1935 and no explanation is given why its effect was not perceived before that time.

■ It is a matter of common knowledge of which the court will take judicial notice that for the period of several years prior to 1935 and for several years thereafter the amount of snowfall in the mountainous sections of eastern Oregon was much less than in former years and that, by reason thereof, the water-table was lowered and many springs throughout that section either ceased to flow or the flow thereof was much lessened. Whether that was the cause for the decrease in the flow of these springs is unknown. Moreover, as stated, the premises of the plaintiff and of the defendants are on the east slope of Mt. Emily and the evidence shows that on that slope the ground is underlaid with hardpan which is more or less impervious to water; that this is overlaid by gravel and the gravel by the surface soil. For quite a distance from the summit of Mt. Emily, as the slope descends into the Grande Ronde valley in the vicinity of plaintiff's premises, the water, seeping through the gravel, rises to the surface in a very large number of springs and many of these springs are in the vicinity of plaintiff's premises. There is no evidence that any of said springs are fed by waters flowing in known and defined channels and it is impossible, from the evidence, to determine the source from which plaintiff's springs derive their water.

Moreover, the trial judge who heard the testimony of the witnesses in this case, and who also made a personal examination of these springs and of End

creek and the surrounding country, stated in a written opinion filed in the cause at the time the decree appealed from was entered that:

"The Court is also of the opinion that the plaintiff has failed to establish that there is any underground channel running from End creek to the plaintiff's springs. The Court is of the opinion that the waters from End creek spread out through the gravel which lies on top of the hardpan and percolates through the same until by the contour of the land it is caused to accumulate at or near the springs and come to the surface. The lands through which the plaintiff claims the channels run are practically level but slope gently to the east toward plaintiff's springs. There are springs along this level for several miles on both sides of the plaintiff's land which indicates to this Court that the waters percolate through this gravel covering on top of the hardpan and come to the surface on a line where the gravel meets the clay of the floor of the valley, or in other words, at the lower edge of the gravel covering. A great deal of the water which feeds these various springs, including the plaintiff's, undoubtedly comes from seepage from End creek but the Court does not believe that there is any satisfactory evidence of an underground channel..

"The plaintiff complains about the change of point of diversion of the waters of End creek by the defendants in 1922, and also complains that the water is used partly on lands with no water right. Since the plaintiff has established no right to the waters of End creek, he is in no position to complain."

After a careful consideration of all the testimony offered upon the trial of this cause, we are of the same opinion as that stated by the trial court.

For these reasons, the decree appealed from is affirmed.