**Albert L. LAWSON and Frances W. Lawson, husband and wife, Appellants (Plaintiffs below),**

v.

**Herbert O. SCHUCHARDT and June A. Schuchardt, husband and wife, Appellees (Defendants below).**

No. 2991.

Supreme Court of Wyoming.

June 27, 1961.

———◆———

Murane, Bostwick & McDaniel, R. R. Bostwick, Casper, for appellants.

Spence, Hill, Oeland & Tschirgi, G. L. Spence, Riverton, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Albert L. and Frances W. Lawson, husband and wife, sold the Hi-Neighbor Motel Resort, situated on State land south of the Boyson Reservoir, to Herbert O. and June A. Schuchardt, husband and wife, for $58,000—$20,000 down and the balance of $38,-

'000 secured by a first mortgage. The plaintiffs brought suit for the foreclosure of the mortgage and defendants filed a "cross-complaint," alleging that plaintiffs made false and fraudulent representations concerning the property for the purpose of inducing defendants to purchase it and asking cancellation of the contract and return of the down payment together with other damages.[1] Defendants admitted having made no installment payments, and the case therefore turns solely upon the question of rescission by reason of the alleged fraud. The court after hearing evidence and argument entered judgment rescinding and cancelling the contract of sale, the note, and mortgage and giving judgment to defendants for the $20,000 down payment plus $1,450 expended on the property, from which judgment this appeal is prosecuted.

The Lawsons had employed Squire of the Moon Realty as agent for the sale, and the Schuchardts first learned of the property by his January 4, 1959, advertisement in the Denver Post, Denver, Colorado:

"5-Unit Motel

"Truck Stop, Cafe, Service Station. Nice home for owner. All this on large lake with boating, fishing and good hunting area. 17 acres land to expand on. Modern bldgs. and new equipment. Main highway. (Clear $20,000 year in this operation). Sell for $58,000. $15,-000 down and $4,800 year on balance. See Mr. Squire Sr. 800 E. Colfax

" 'Moon'         MA. 3–0289

" 'Rush To The "Moon" in '59' "

The defendants contacted Squire, later inspected the property, and on January 14, 1959, signed the papers relating to the purchase.

Although there were a number of charges of fraud against the plaintiffs, the issues were narrowed by the trial court's conclusions of fact and law wherein it found in favor of plaintiffs on all allegations of fraud except:

"b.  That said property would earn a net of $20,000.00 yearly.

"c.  That said property was located on the lake, known as 'Boysen Lake,' and that at the site of said property there is year around fishing, that as soon as the ice leaves the lake in the early springtime there is boating every year at the site thereof, and that the water in said lake is such as to permit fishing and boating and other water sports at all times after the ice leaves said lake in the springtime."

Accordingly, it becomes unnecessary to examine the record regarding any testimony except that which would tend to support the court's findings on these points.

Schuchardt testified that:

"He [Squire] told me [the property was located] on a big lake in the northern part of Wyoming. * * * In the summertime people are coming from all over the state, mostly from Casper, with their boats, stay overnight and put their boats on the ramp, which we have there, into the water. Plenty of water skiing, plenty fishing going on during the summertime, and even he [Lawson] has three boats that fishing parties are being taken on."

Schuchardt also stated that Lawson had "repeated the same things" to him and that during his visit to the site, prior to the final arrangements for purchase, the water was frozen and "at that particular time we couldn't tell anything."

According to Squire, he had told the Schuchardts during their initial conversation:

"That the property would clear $20,-000, that by adding the service station facilities which Mr. Lawson was not operating to the full extent at that time, by the handling of the boats on

---

1.  Defendants in the complaint requested reformation of the note and mortgage to show the date that the installments were due. The matter was settled by stipulation and is not here in issue.

the lake which Mr. Lawson had not handled for two years, and getting additional motor boats for the lake he could increase that income easily up to the $20,000 figure."

Asked where he got that information, he replied:

"Those were made from past experience from handling resort property and the lake shore cabins at Grand View Reservoir and basing it on approximately half or less of what they do in that area, what is the potential in this area."

Defendants entered in evidence without objection color photographs shown by Squire to Schuchardt at the time of their first conversation. One is of hunters and game near the Hi-Neighbor, another of the buildings, and a third of three fishermen with their catch. Each photograph showed a substantial body of water in the immediate background. However, Schuchardt's testimony indicated that after the ice melted following their purchase of the property there was no lake, just the Wind River. Defendants also introduced in evidence without objection photographs of the boat-ramp area at the Hi-Neighbor taken from June 21, 1959, to July 28, 1959, showing the water line a considerable distance below the boat ramp and going further down as the season progressed. A photograph of the area taken on July 2, 1959, showed a dust storm over a portion of what had been the lake bed. A photograph taken on October 10, 1959, indicated the water line had continued to recede. Lawson testified that to the best of his recollection the lake level was lower in 1955 than it was in 1958 or 1959.

On cross-examination Squire was asked: " * * * isn't it true, Mr. Squire, that it would be completely and totally impossible to conduct a boating operation at the Hi-Neighbor resort by reason of the fact that, first, the lake recedes in the wintertime and often times never comes back even up to the boat docks; and, secondly, that there is a

wind which makes the establishment of a harbor a complete impossibility at the Hi-Neighbor resort? Did you investigate that?"

He answered:

"I didn't."

Squire then stated that he did not ask Lawson about the matter but that Lawson said they had a lot of boating and that he, Squire, had seen boating.

In their argument that the judgment was erroneous, the plaintiffs press several points:

■ They complain that the court indulged in conjecture in stating that the property was "located on the hot prairies of central Wyoming." While no testimony was adduced which directly substantiates such a conclusion, the photographs, admitted without objection, showed the water line to have continuously receded from the boat ramp during 1959; and one of them disclosed a dust storm over the lake bed; all of which leads to the inevitable conclusion that the area was extremely dry at that time. Moreover, it is well recognized that a court is entitled to take judicial notice of climatic conditions. Bull v. Siegrist, 169 Or. 180, 126 P.2d 832; 31 C.J.S. Evidence § 73. And see Price v. State Highway Commission, 62 Wyo. 385, 167 P.2d 309.

■ On the basis of Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 51 A.L.R. 13, and First Nat. Bank of Cheyenne v. Swan, 3 Wyo. 356, 23 P. 743, it is argued that any representations by plaintiffs or their agent Squire as to amounts the property "would earn" or "would clear" referred to the future and therefore could furnish no foundation for a claim of fraud or deceit. Although it is the general rule that fraud must relate to present or pre-existing facts and cannot ordinarily be predicated upon unfulfilled promises or statements as to future events, this principle is not helpful in the present case since the crucial issue relates to the alleged factual misrepresentations as to the suitability of the property for serving persons interested in boating, fishing, and water sports. Analysis of the testimony re-

veals that the representations concerning the future earnings were predicated upon statements of purported facts concerning the water at the Hi-Neighbor site. Misrepresentations that appear to relate primarily to the future may often grow out of misstatements concerning present facts. Annotations, 51 A.L.R. 46, 95; 125 A.L.R. 879, 884.

Plaintiffs insist that too much emphasis, was placed upon the fact that the word' "lake" was used rather than "reservoir" whereas the terms are in essence synonymous. It would appear that the use of the word "lake" rather than "reservoir" was not a determinative factor in the purchase of the property and that the trial court did not consider this matter to be of particular importance in resolving the real controversy: the existence or lack of suitable water at the Hi-Neighbor site.

■■ Plaintiffs claim they were misled by the court's ruling that evidence concerning the water level was immaterial. The incident to which reference was made occurred on the cross-examination of Schuchardt when plaintiffs' counsel asked whether a "chart" containing the record of water elevation showed the water level of February 1959 to be higher or lower than February 1960 and if the water level was higher or lower than the ice level. He also asked Schuchardt about the relative ice levels in the two years. No chart had been placed in evidence, and there was no previous testimony concerning it. Defendants' counsel objected to the line of questioning on the grounds that it assumed figures not in evidence, was incompetent, irrelevant, immaterial, and not proper cross-examination. The court stated, "It seems to be immaterial," whereupon plaintiffs' counsel abandoned the point and failed to present any other evidence on the subject. Nothing is here presented to show the materiality of a comparison in water or ice heights for the years 1959 and 1960. Additionally, the primary question was improper inasmuch as it alluded to a chart which was not in evidence. Johnson v. Charles William Palomba Co., 114 Conn. 108, 157 A. 902, 80 A.L.R. 441; 4 Jones, Evidence, p. 1700 (5 ed.). No prejudicial error may be based upon the exclusion of improper evidence merely because an erroneous reason is given for the exclusion. Vaughn Mach. Co. v. Quintard, 37 App.Div. 368, 55 N.Y.S. 1114, affirmed 165 N.Y. 649, 59 N.E. 1132; and see 5A C.J.S. Appeal & Error § 1739.

■ Plaintiffs contend "There is no evidence in this case that Schuchardt was in any way damaged as a result of relying upon representations made because there is no evidence with reference to the future prospects of the Hi-Neighbor Resort," and 23 Am.Jur. Fraud and Deceit § 20 (1939) is cited as to the elements and requisites of actionable fraud. The argument on this point is general and lacks meaning unless it be related to the contention that whatever was said was merely "trade talk," "dealers' talk," "sellers' statements," etc., and that the maxim, caveat emptor, applies. It must be noted that the doctrine of caveat emptor is employed by modern courts under new standards of business ethics which demand that statements of fact be at least honestly and carefully made. Byrnes v. Mutual Life Insurance Company of New York, 9 Cir., 217 F.2d 497, certiorari denied 348 U.S. 971, 75 S.Ct. 532, 99 L.Ed. 756; Prosser, Torts, pp. 552, 553 (2 ed.).

■ There was before the trial court substantial evidence to justify a finding that plaintiffs and their agent made factual representations as to the present possibilities of the property and that such factual representations were false, fraudulent, and calculated to create upon the prospective buyers a false impression upon which they relied in purchasing the property. The case must, therefore, be affirmed.

Affirmed.