

FILED

April 19, 2021

ST-2020-CV-00278

TAMARA CHARLES

CLERK OF THE COURT

FOR PUBLICATION

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
************

| | |
|---|---|
| **CHRISTOPH KEITH MASSAC,** ) | **CASE NO. ST-2020-CV-00278** |
| ) | |
| **Plaintiff,** ) | **ACTION TO QUIET TITLE** |
| ) | |
| **-vs-** ) | |
| ) | |
| **GOVERNMENT OF THE VIRGIN ISLANDS,** ) | |
| **OFFICE OF THE LIEUTENANT GOVERNOR** ) | |
| **and all parties claiming an interest in Parcel No.** ) | |
| **486 Remainder and Parcel No. 537 Remainder** ) | |
| **Chocolate Hole, St. John, Virgin Islands,** ) | |
| ) | |
| **Defendants.** ) | |

Cite as: VI Super 45

ATIIM D. ABRAHAM, Esquire, Law Offices of Clive Rivers, St. Thomas, U.S.V.I., for the *Plaintiff.*

JULIE A. BEBERMAN, Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, U.S.V.I., for the *Government of the Virgin Islands, Office of the Lieutenant Governor.*

FRANCOIS, Judge

## MEMORANDUM OPINION AND ORDER

¶1     **THIS MATTER** is before the Court on Christoph Keith Massac and Government of the Virgin Islands, Office of the Lieutenant Governor's Stipulation To Consent Judgment, filed on March 26, 2021.

¶2     This case presents the novel issue of whether the Government, specifically the Office of the Lieutenant Governor which encompasses the Recorder of Deeds, may act as a proxy for a party in the reformation of a deed by stipulation. The Court finds that the parties seeking reformation of a deed by stipulation must be the same as those involved in the conveyance.

## I.    INTRODUCTION

¶3    Plaintiff Christoph Massac ("Massac") filed the instant case on July 13, 2020. Massac purchased a one-third (1/3) interest in property in St. John on May 9, 2006. Defendant Government of the Virgin Islands, Office of the Lieutenant Governor ("Government"), rejected Massac's quitclaim deed allegedly because it omitted a dash in its description of the "P.W.D. Map." Massac sued the Government as Massac could not locate the original quitclaim deed and he sought an order directing the Lieutenant Governor's Office to attest a copy of the original deed and record it. Over the course of this case, Massac and the Government apparently discovered that the quitclaim deed had an error because it purported to convey a previously-conveyed parcel.

¶4    Massac and the Government now move this Court to approve their Stipulation To Consent Judgment, so that the quitclaim deed may be corrected and subsequently attested to and recorded. Specifically, the parties request the deed be reformed with the following eleven (11) terms and conditions:

I. That on May 9, 2006, there was a deed executed by Grantor Irma Echevarria, in favor of Grantee, Christoph Keith Massac.

II. That the Grantor, Irma Echevarria, could not legally give what she did not possess.

III. That the [Office of the] Public Surveyor is in possession of the OLG Map No. D9-5484-T94 which shows that Grantor was not in possession of Parcel No. 537-3 on May 9, 2006.

IV. That there was a scrivener's error in including Parcel No. 537-3 Estate Chocolate Hole because that property had already been conveyed prior to 2006.

V. That OLG Map No. D9-5484-T94 shows that Grantor was only in possession of a 1/3 interest in the following parcels:
      a. Parcel No. 486 Remainder;
      b. Parcel No. 537 Remainder, including Parcel No. 537-1 and Parcel No. 537-2.

VI. That Parcel No. 537 Remainder as shown on OLG Map No. D9-5484-T94 was further subdivided in 2012 to include a new Parcel No. 537-4 ("The Pond").

VII. That Grantor, Irma Echevarria also received a 1/3 interest in Parcel No. 537-4 ("The Pond") by way of an Adjudication entered by the Superior Court in Probate No. ST-04-PB-03 on January 26, 2015.

*Christoph Keith Massac v. Government of the Virgin Islands, et al.*
Case No. ST-2020-CV-00278
Memorandum Opinion and Order
Page 3 of 7

VI Super 45

VIII. That in 2006 when Grantor executed the Quit Claim Deed, Parcel No. 537-4 was a part of Parcel No. 537 Remainder as shown on OLG Map No. D9-5484-T94.

IX. That Irma Echevarria possessed clear title and the right to convey via the 2006 Quit Claim any and all her interest in the following parcels:
      a. Parcel No. 486 Remainder;
      b. Parcel No. 537 Remainder, including Parcel No. 537-1 and Parcel No. 537-2.

X. That the Quit Claim Deed is hereby reformed to conform to the fact that Grantor, Irma Echevarria, held a 1/3 interest in Parcel No. 486 Remainder and Parcel No. 537 Remainder, including Parcels no. 537-1, 537-2 Estate Chocolate Hole, No. 11 Cruz Bay Quarter, St. John, U.S. Virgin Islands, as particularly shown on P.W.D. Map No. D9-3860-T67 and O.L.G. File No. A9-454-T94, which was duly conveyed to Plaintiff via Quitclaim Deed dated May 9, 2006.

XI. That the instant Consent Order, once duly executed by all parties and the Judge of the Superior Court of the Virgin Islands, shall be filed with the Office of the Recorder of Deeds, Division of St. Thomas and St. John, within thirty days as conclusive evidence of the facts stated herein.

¶5    Ms. Irma Echevarria, the grantor of the original quitclaim deed, has since passed away.[1]

## II.    LEGAL STANDARD

### A.  Reformation of a Deed

¶6    Reformation of a deed is an equitable remedy.[2] Deed reformation is generally governed by contract law; as the Supreme Court of the Virgin Islands stated, "[a] deed is a contract, and thus in most circumstances the principles of contract interpretation govern."[3] Or as the District Court stated in *Christmas v. V.I. Water & Power Auth.*,[4] deeds should "be construed and enforced according to the principles of contract law."[5] The issue before the Court now is one, therefore, of contract reformation. In *Cent. Mortg. Co. v. Powers*,[6] the Virgin Islands District Court conducted a *Banks* analysis and adopted the elements of reformation of a contract based on mutual mistake

---

[1] Pl.'s Compl. ¶ 11.

[2] *See Wilkinson v. Wilkinson*, 70 V.I. 901, 917 (V.I. 2019) (quoting *Andrew v. Power Mktg. Direct, Inc.*, 2012-Ohio 4371, 978 N.E.2d 974, 988 (Ohio Ct. App. 2012)) ("A party seeking an equitable remedy, such as declaratory judgment, reformation or rescission of a contract, must prove a fraud claim with clear and convincing evidence . . . ."); *Alexander v. Alexander*, 65 V.I. 372, n. 6 (V.I. 2016) ("Anduze never requested equitable relief from the Superior Court and we decline to address as part of this appeal whether reformation of the defective deed would have been possible.").

[3] *Streibich v. Underwood*, 2021 VI 3, ¶24.

[4] 527 F. Supp. 843 (D.V.I. 1981).

[5] *Id.* at 847 (citing to *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 127 S.E.2d 539, 541 (N.C. 1962)).

[6] Civil No. 2014-0096, __V.I.__, 2017 U.S. Dist. LEXIS 47755 (D.V.I. Mar. 30, 2017).

as outlined in § 155 of the Restatement (Second) of Contracts.[7] The Court adopts the sound analysis of the Virgin Islands District Court in *Central Mortgage Company*.

¶7      Section 155 provides that:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.[8]

¶8      In adopting § 155, the District Court in *Central Mortgage Company* was considering reformation of a mortgage document.[9] The District Court concluded reformation based on mutual mistake should be adopted because "[s]uch an equitable remedy will permit land to be alienated where mutual mistake has occurred in the title documents in that the improperly formulated document did not embody the intentions of the parties."[10] It also noted that for a party to avail itself of reformation, the party would need to prove mutual mistake by "clear and convincing evidence."[11]

¶9      Additionally, a part of § 155 is the doctrine of "scrivener's error."[12] "The equitable doctrine of scrivener's error permits a court to ignore a mistake in a written document when there is clear and convincing evidence that 'a mistake has occurred and that the mistake does not reflect the intent of the parties.'"[13] As comment (a) of § 155 points out, "mutual mistake" and "scrivener's error" are largely the same thing: "[c]ases granting relief under the circumstances covered by this Section often speak of 'scrivener's errors' or similar terms that point up the mistake as one of transcription of the parties' actual agreement."[14]

¶10     A quitclaim deed conveys only the interest or estate which the grantor possesses at the time, and a grantor cannot convey more than he actually owns.[15] Reformation of a deed or contract

---

[7] *Id.* at *18-21; RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981).

[8] RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981).

[9] *Cent. Mortg. Co.*, Civil No. 2014-0096, __V.I.__, 2017 U.S. Dist. LEXIS 47755 (D.V.I. Mar. 30, 2017).

[10] *Id.* at *20.

[11] *Id.* at *20-21 (citing *Bennington Foods, L.L.C. v. St. Croix Renaissance Group, L.L.L.P.*, Civil Action No. 06-154, 2010 U.S. Dist. LEXIS 39038, at *15 (D.V.I. Apr. 20, 2010)).

[12] *Davies v. Certain Underwriters at Lloyds of London*, CASE NO. ST-2015-CV-0000637, 2017 V.I. LEXIS 34, at *13-14 (V.I. Super. Ct. Feb. 24, 2017) ("Plaintiff calls for the Court to adopt a common law rule allowing the Court to modify a contract upon a showing by parol evidence of a drafting mistake in order to allow the contract's language to reflect the true intent of the signatories. The doctrine of scrivener's error is articulated in the Restatement (Second) of Contracts § 155.").

[13] *Dobin v. Cook (In re Belotti)*, Bankruptcy Case No. 16-204842017, Bankr. LEXIS 1031, at *9 (Bankr. N.J. 2017) (quoting *Int'l Union v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 901 (3d Cir. 1992)).

[14] RESTATEMENT (SECOND) OF CONTRACTS § 155 cmt. a (1981).

[15] *Van Rensselaer v. Kearney*, 52 U.S. 297, 322 (1851) ("A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time; and does not operate to pass or bind an interest not then in existence."); *see also Legal Maxims; Nemo dat quod non habet*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("No one gives what he does not have; no one transfers (a right) that he

also may be achieved through stipulation of the parties to the deed or contract.[16] V.I. CODE ANN. tit. 33, § 2362 delineates the duties of the Recorder of Deeds – namely that she shall record every transfer of real property interests, she shall transmit this record to the Lieutenant Governor and the Tax Assessor, and every five (5) years she shall conduct an assessment of the cadastral and land records.[17]

## III.   ANALYSIS

¶11   This case presents the novel issue of whether the Government may subsequently seek reformation of a deed by stipulation although it is not a party involved in the original conveyance.

¶12   Massac purchased land in 2006. Included in the deed, purportedly by a scrivener's error, was a plot, Parcel No. 537-3. This parcel, however, had already been conveyed previously. It is axiomatic that the grantor could not grant possession of that parcel, as the grantor herself was not in possession of it. The Government rejected the deed as provided by Massac, and Massac sought an order that the Government attest a copy of the original quitclaim deed and record it. Now, both parties seek the Court's intervention to reform the deed upon discovery of the scrivener's error, because the original grantor is deceased.

¶13   The parties point to a map in the possession of the Public Surveyor, OLG Map No. D9-5484-T94, which ostensibly shows that the grantor was not in possession of Parcel No. 537-3 at the time of the conveyance.[18] The parties do not dispute this or any other point, both merely seek reformation of the deed to accurately describe what was conveyed. However, the Government was not a party to the original conveyance of the quitclaim deed; rather, it is an "uninvolved" third-party.[19]

¶14   The Court may reform an agreement at the request of one party to the conveyance upon a showing of mutual mistake so long as the reformation does not harm the interests of third parties unfairly. Here one party has requested reformation and no third parties will be unfairly affected. The original party granting the deed can no longer be relied on to help reform the deed, as she is

---

does not possess. [] According to this maxim, no one gives a better title to property than he himself possesses. A variation of this maxim is *Nemo dat qui non habet* (no one gives who does not have).").

[16] *See Foley v. Southport Manor Convalescent Ctr.*, 561 A.2d 978, 979 (Conn. App. Ct. 1989) ("The parties ultimately stipulated to a judgment that the court, Kline, J., rendered orally as follows: 'What I'll do is right now enter by stipulation, I'll enter a reformation of the contract, and the only reformation will be an extension of time for the down payment.'"); *Mississippi Indus. for Blind v. Jackson*, 95 So. 2d 109, 111 (Miss. 1957) ("By stipulation it was agreed that as between the complainant and Mrs. Sproles he was entitled to a reformation of the deed of trust but that the question of priority of liens of the judgment creditors and Worth Jackson were submitted to the court and it was further stipulated and agreed that the judgments in question are all regular and valid."); *Lawson v. Schuchardt*, 363 P.2d 90, n. 1 (Wyo. 1961) ("Defendants in the complaint requested reformation of the note and mortgage to show the date that the installments were due. The matter was settled by stipulation and is not here in issue.").

[17] 33 V.I.C. § 2362.

[18] The Court has not been provided with this map or any other documentation mentioned within the Stipulation To Consent Judgment.

[19] The Government is involved insofar as the Recorder of Deeds must record the deed. It was not involved in the transfer, however.

now deceased. To reform a deed, the Court must be convinced by clear evidence that *both* parties were mistaken as to the effect or contents of the agreement. The Lieutenant Governor's Office is "responsible for recording all property deeds, mortgages, personal liens, tax liens, and other miscellaneous documents."[20] The statute does not provide a role, however, for the Lieutenant Governor's Office to act as a substitute for a party in a real property conveyance. The Government or Massac still needs to provide clear and convincing evidence that both conveying parties were mistaken as to the effect or contents of the agreement.

¶15     Massac and the Government have stipulated there was a scrivener's error in the deed. To reform the contract under the scrivener's error doctrine, the Court must be shown by clear and convincing evidence that inclusion of the previously conveyed parcel was not the intent of both parties *to the conveyance* - in this case, Massac and the grantor. As with reformation based on mutual mistake, the Court has not been presented with clear and convincing evidence that inclusion of the already-conveyed parcel, even while not legally possible, was an error and not the *intent* of the parties.

¶16     Massac has an interest in having his deed properly reflect what he actually owns; the Government has an interest in having accurate documents filed with its offices; the public at large has an interest in definitive and errorless documentation of property conveyances. Reformation in this case will not affect the rights of anyone else. Yet, while it is a legal maxim that *aequitas erroribus medetur* — equity rectifies errors — the Court cannot ascertain how it can proceed to reform the erroneous deed under the above-mentioned equitable doctrines and precedent.[21] It is discommodious that the Court cannot merely reform the deed in a case such as this - where reformation would not affect any third-party and would also be beneficial to both parties and society. However, the Court is bound to prior rulings, and to stretch the rules of equity here to allow the Government to stand in for the grantor may establish a precedent that could be used inequitably in the future.[22] The minor convenience here pales in comparison to the potential consequences of abuse.

¶17     Reformation by mutual mistake may only be accomplished by clear and convincing evidence that both parties to the conveyance were mistaken as to the contents or effects of the writing. Relatedly, reformation under the scrivener's error doctrine may only be accomplished by clear and convincing evidence that the error does not reflect the intent of both the parties to the conveyance. To reform by stipulation, the proper party, in this case, the estate of the grantor, must be involved, and the Government cannot act as her proxy. Absent such a stipulation or the production of clear and convincing evidence under the doctrines of mutual mistake or scrivener's error, the Stipulation To Consent Judgment must be disapproved.

¶18     Accordingly, it is hereby

---

[20] *Recorder of Deeds*, GOV'T OF THE V.I. (last visited Apr. 12, 2021) https://ltg.gov.vi/departments/recorder-of-deeds/; *see also* 33 V.I.C. § 2362 which provides for the duties of the Recorder of Deeds.

[21] *Legal Maxims; Aequitas erroribus medetur*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Equity rectifies errors.").

[22] "Equity is not vague and uncertain, but has boundaries and prescribed limits." *Legal Maxims; Aequitas non vaga* [. . .], BLACK'S LAW DICTIONARY (11th ed. 2019).

**ORDERED** that Plaintiff and Defendant's Stipulation To Consent Judgment, filed March 26, 2021, is **DISAPPROVED**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

**DATED:** April _19_, 2021

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**DONNA D. DONOVAN**
Court Clerk Supervisor: ___4__/__21__/__2021__